CITY OF MITCHELL, Plaintiff, v. BOARD OF RAILROAD
        COMMISSIONERS, Defendant.

and

CITY OF HURON, Plaintiff, v. BOARD OF RAILROAD
        COMMISSIONERS, Defendant.

(184 N. W. 246.)

(File Nos. 4920, 4921.   Opinion filed August 31, 1921.)

1.  **Telegraphs and Telephones—Accepted Franchise Maximum Rates,
    Power of Railroad Commissioners to Authorize Higher Rates—
    Police Power.**

    In determining question whether state board of railroad
    commissioners is empowered to authorize a telephone company
    to charge rates within a municipality in excess of the maximum
    rates specified in the franchise and accepted by the company,
    held, that said Board had, under state police power, power
    over rates to be charged for telephone service within the state,
    unless such power is limited by Constitution, Art. 10, Sec. 3,
    prohibiting construction of telephone lines within city limits
    without consent of local authorities, and Art. 17, Sec. 4, pro-
    hibiting abridgement of exercise of police power of the state
    or such construction thereof as to permit corporations to con-
    duct their business in such manner as to infringe equal rights
    of individuals or well-being of state.

2.  **Same—City's Right to Impose Conditions to its Consent to Con-
    struct Line—Maximum Rate Franchise, Whether an Unimpair-
    able Contract, Whether Police Power Exercisable by City, Con-
    stitutional Provision Applied.**

    Under Const., Art. 10, Sec. 3, prohibiting construction of
    telephone lines within city limits without consent of local
    authorities, city might impose conditions to its consent, accept-
    ance of which conditions was binding upon telephone company,
    (following City of Mitchell v. Telephone Co., 25 S. D. 409;)
    and held, that if said provision conferred upon cities power to
    fix charges for public service as a condition to allowing plaintiff
    telephone company to enter such cities, a binding contract
    exists.   So held, in light of cities' contention that through
    power given them to refuse such permission, and incidently to
    impose conditions, constitution has lodged in them exercise of
    police power, and has to that extent restricted exercise thereof
    by any other state agency.

3.  **Same—Police Power, Whether Impliedly Conferred by Constitu-
    tion—Exercise of State Police Power, Whether Legislative
    Control Neutralized by Franchise Contract, Court's Reluctance
    to So Adjudge—Futility of Cities' Theory as Authorizing Con-
    fiscation.**

It being conceded by all parties that if Const. has conferred
police power upon municipalities, it is by implication only;
courts should hesitate to hold that a state sovereign power,
free exercise of which by proper state agency might be essen-
tial to general welfare, such as police power, has by implica-
tion been taken from legislative control and lodged in part
with municipalities; and should also hesitate to hold that
Const. has by implication conferred upon municipalities power
through exercise of which it might confiscate property of public
service corporations; and the contention that such municipal
right exists illustrates the erroneous theory that limitation by
contract upon governmental power to regulate rates chargeable
by a public service corporation are to be implied for purpose
of sustaning confiscation of private property.

4.   Same—Police Power, Legislative Conferring Of On Cities, Dis-
     tinguished from Implied, Indefinite Powers—Rule

     While by legislative enactment certain police powers are
expressly conferred on municipalities, yet to so confer power
subject to future legislative control is far different than con-
ferring indefinite power by implication.   So held, in determin-
ing whether a telephone rate fixed by city franchise is subject
to exercise of state police powers to promote general welfare.

5.   Same—Constitutional   Prohibition   of   Telephone   Construction
     Without  Cities'  Consent  Harmonized  With  Provision  Re
     Abridgement of State Police Power—City's Non-right to De-
     prive State of Police Power—Limiting City's Power to Pre-
     vent Confiscation—Rate Regulation As Police Power.

     To so construe Const., Art. 10, Sec. 3, prohibiting telephone
line construction in cities without consent of local authorities,
as would frequently bring about situation under which public
service corporations enjoyed rights in conflict with general
well being of state, would render it inconsistent with Art. 17,
Sec. 4, prohibiting abridgement of exercise of state police
power or such construction thereof as to permit corporations to
so conduct business as to infringe equal rights of individuals
or general well being of state; and held, that constitutional
provision requiring municipal consent to such line construction
must be read in connection with the latter constitutional pro-
vision concerning police power; and a city may not annex such
terms to its consent as will deprive state of its inherent police
power to see that a telephone company is not prevented from
serving the public by the city's enforcement of conditions in a
consenting ordinance that have become impossible of perform-
ance; since what may have been a reasonable telephone rate at
date of such ordinance may, under changed economic conditions,
become confiscatory, and the telephone company may not be
able to serve public on account of insufficient revenues based

upon ordinance rate; and relief from such situation lies in state police power, which may never be abridged nor bartered away [following City of Scranton v. Public Service Commission, (Penn.) 110 Atl. 775, and City of Antonio v. San Antonio Public Service Co., 41 Sup. Ct. Rep. 428;] that regulation of rates by changing them as public welfare may require is essentially a police power, and an inherent element of sovereignty; and in determining whether part of police power has been conferred upon city with or without limitation, rule that delegation of sovereign right to regulate rates must be clearly expressed and all doubts resolved against the city, obtains.

6.  **Same—Constitutional Provision Re Non-construction of City Telephone Line Without Local Consent, Whether Conferring Municipal Police Power—Railway Board's Increase of Rates, Jurisdiction Re.**

Const., Art. 10, Sec. 3, prohibiting telephone line construction within a city without consent of local authorities, confers no police power upon cities; and Court would so hold even in absence of Art. 17, Sec. 4, prohibiting abridgement of state's exercise of police power, etc., since any delegation of police power must be clear and express; and, in light of the latter provision, Court will not hold that people intended by the former provision to do by implication, that which by latter they forbid the Legislature from doing; hence held, that while plaintiffs cities had the right, when granting permission to defendant telephone company to establish local lines, to impose conditions, which when accepted became binding contracts, such conditions must not conflict with Art. 17, Sec. 4. Therefore, held, further, that state Railway Board acted within its jurisdiction in entertaining defendants' petitions for continuing in force the higher rate, which rate had been established while said telephone system was under federal control and management, which petitions for continuing the rate was based on the ground that the franchise rates, owing to subsequent economic conditions, had become confiscatory of defendants' property. So held, where such petition was filed while federal government under the War power held and operated defendants' and other telephone systems and had raised the rates to be paid by telephone service, and in anticipation of return of defendants' lines to its control and management.

Original proceeding upon certiorari by the City of Mitchell, a municipal corporation, against the Board of Railway Commissioners; and by the City of Huron, a municipal corporation, against said Board, in the matter of the application of Dakota Telephone Company to continue in effect, after expiration of federal control, the telephone exchange rental rates authorized by

the Postmaster General; Dakota Central Telephone Company, Respondent; praying an adjudication as to the legality of the action taken by defendant Board in continuing in effect said telephone exchange rental rates.    Writ denied and proceedings dismissed.

*Frank W. Mitchell,* and *Lauritz Miller,* for Plaintiff City of Mitchell.

*Fred Duffy,* for Plaintiff City of Huron.

*Null & Royhl,* for Respondent Dakota Central Telephone Company.

*Byron S. Payne,* Attorney General, *Oliver E. Sweet,* Assistant Attorney General, for Defendant Board of Railroad Commissioners.

(1)    To point one of the opinion, and as supporting contention that power of regulation of telephone rates is vested in Board of Railroad Commissioners, Defendants cited: Woodburn v. Public Serv. Com. 82 Oreg. 114, 161 Pac. 391, L. R. A. 1919-C. 98; State v. Pub. Util. Comm. ex rel. Mitchell v. Chicago & W. T. R. Co. 275 Ill. 570, P. U. R. 1917-B, 1046; Chicago v. O'Connell, 278 Ill. 591, P. U. R. 1917-B, 730, 116 N. E. 210.

(2)    To point two, Plaintiffs cited: City of Mitchell v. Dakota Central Telephone Co., 246 U. S. 396, 62 L. ed. 793; City of Allegheny v. Millvale E. & S. Ry. Co. 159 Pa. 411, 28 Atl. 202; Boerth v. Detroit City Gas Co. 152 Mich. 657, 116 N. W. 628, 18 L. R. A. (N. S.) 1197; Muncie Nat. Gas Co. v. Muncie, 160 Ind. 97, 66 N. E. 436, 60 L. R. A. 822; Cleveland v. Cleveland St. Ry. Co. 194 U. S. 517; People v. O'Brien, 111 N. Y. 1, 2 L. R. A. 255; Adamson v. Nassau Electric Ry. Co. 89 Hun. 261, 34 N. Y. Supp. 1973; and submitted that: Art. 10, Sec. 3, Const., grants some power to city it did not have before; and it is both a grant of power and a limitation upon legislative power; citing further: Quimby v. Public Service Commissioner, (N. Y.) 119 N. E. 433; City of Mitchell v. Dakota Central Telephone Co. 25 S. D. 409; Interurban Ry. & T. Co. v. Public Util. Com. 98 O. St. 287, 120 N. E. 831, 3 L. R. A. 696; City of Watertown v. Watertown L. & P. Co. (S. D.) 173 N. W. 739; Art. 6, Sec. 12, Const.; Art. 1, Sec. 10, Const.; Art. 3, Sec. 24, Const., Subds. 7, 9, 10, 17, Sec. 1229, Rev. Pol. Code 1903; Laws 1907, Ch.

88; Spangler v. City of Mitchell, 35 S. D. 355, 152 N. W. 339, Ann. Cases 1918-P. 373; Leiper v. Baltimore & P. R. Co. 262 Pa. 328, P. U. R. 1919-C, 397, 105 Atl. 551.

Defendants cited, as sustaining contention that: There can be no impairment of a contract made in contemplation of fundamental powers of government when government undertakes to exercise those fundamental powers: Tramberger v. Chicago & A. R. Co. 250 Mo. 55, 156 S. W. 694; State ex rel. Triay v. Burr (Fla.) 84 So. 61; Nollis on State Railways, 2nd Ed. Vol. 1, Sec. 52, and cases cited; Warsaw v. Pavilion Gas Co. 182 N. Y. S. 73, P. U. R. 1920-D, 855; Manitowac v. Manitowac & N. Traction Co. 145 Wis. 13, 129 N. W. 930.

(3) To point three, Defendants cited: Woodburn v. Public Service Com. 82 Oreg. 114, 161 Pac. 391, L. R. A. 1919-C, 98; Home Telephone Co. v. Los Angeles, 211 U. S. 265, 29 Sup. Ct. 50; Milwaukee Elec. Ry. v. Wisconsin R. R. Com. 238 U. S. 174, 35 Sup. Ct. 820, Secs. 9503, 9522, 9523, 9524, 9525, 9793; Laws 1909, Ch. 289.

Respondent, Dakota Central Telephone Company, cited: San Antonio v. San Antonio Pub. Serv. Co. (U. S.) Adv. Sheets May 15, 1921; Home Teleph. & Teleg. Co. v. Los Angeles, 211 U. S. 265 (273), 53 L. ed. 176, 29 Sup. Ct. 50, and cases cited; Milwaukee Electric R. & Light Co. v. Wisconsin R. Com., 238 U. S. 174, 59 L. ed. 1254, 1260, P. U. R. 1915-D, 35 Sup. Ct. 820, Commonwealth v. Vrooman, 164 Pa. 306, 30 Atl. 217, 25 L. R. A. 250, 44 Am. St. Rep. 603.

(5) To point five, plaintiffs cited: City of Mitchell v. Dakota Central Telephone Co. 25 S. D. 409, 127 N. W. 582; McQuillan on Munic. Ordinances, Sec. 567, and cases cited; Southern Iowa Electric Co. v. Chariton, (U. S.) 65 L. ed. 514.

(6) To point six, Plaintiffs cited: City of Mitchell v. Dakota Central Telephone Co. 246 U. S. 396; City of Watertown v. Watertown L. & P. Co. (S. D.) 173 N. W. 739; In re Lincoln Water Co. (Me.) P. U. R. 1919-B, 752.

Respondent, Dakota Central Telephone Company, submitted that: Art. 17, Sec. 4, Const., does not constitute a grant of power to cities, but is a limitation of legislative power; citing: St. Louis v. Public Service Com. 207 S. W. 799; Wilkinsburg v.

Pittsburg Ry. Co. P. U. R. 1918-F, 131; Re United Ry. Co. P. U. R. 1918-D, 302-400, and cases cited.

Respondent further submitted that: Legislative intent was that Board of Railroad Commissioners should be the supreme authority on question of rates and regulation of telephone companies; and cited: Subd. 13, Sec. 52, Ch. 119, Laws 1913; Subd. 18, Sec. 6169, Code 1919; Subd. 7, Sec. 6170. Under Const., Art. 17, Sec. 4, cited: Scranton v. Public Service Com., 110 Atl. 775; Allegheny City v. Millville, E. & S. Street R. Co. 159 Pa. 411, 28 Atl. 202.

Defendants submitted that: Const., Art. 10, Sec. 3, does not confer rate-making or rate-controlling power on any municipality; especially in view of Art. 17, Sec. 4.

WHITING, J. The Dakota Central Telephone Company, hereinafter spoken of as the company, owns and operates telephone lines extending over various portions of this state, and included within its properties are local telephone systems in many of our cities; among such cities are Mitchell and Huron, hereinafter spoken of as plaintiffs. Prior to the late war, the systems in plaintiff cities were operated under franchises granted by plaintiffs, which franchises purported to fix the maximum rates that might be charged for telephone services. The company had accepted the rates as fixed by the Mitchell franchise. Whether it ever accepted those fixed in the Huron franchise is a matter now in dispute. When the federal government took over the telephone systems of the country, it raised the rates to be charged for telephone service throughout this state. In anticipation of the return of its lines to its control and management, the company, some months prior to such return, petitioned the Board of Railroad Commissioners of this state, hereinafter spoken of as the Board, and sought from such Board authority to continue such higher rates in effect when such lines should be returned to their control. A hearing was had at which the justness of the rates' seems to have been thoroughly investigated. The Board granted the relief asked by such company. By certiorari proceedings, plaintiffs seek to have the legality of the action taken by such Board determined by this court. While a separate proceeding has been instituted by each plaintiff, the two were submitted together

upon one set of printed records, and will both be disposed of in this decision.

[1]   For the purposes of this decision, we will assume that the company accepted the rates fixed in both franchises. It is unquestioned that the Board had, under the police power of the state full power over the rates to be charged for telephone services in this state, unless such power had been limited by a constitutional provision hereinafter referred to. The real question before us is, Has the Board power to authorize a telephone company to charge rates for telephone service within a municipality in excess of the maximum rates specified in a franchise granted by such municipality and accepted by the telephone company?

[2]   Section 3, art. 10, of the state Constitution provides that—

"No * * * telephone line shall be constructed within the limits of any * * * city without the consent of its local authorities."

This court held, in City of Mitchell v. Telephone Co., 25 S. D. 409, 127 N. W. 582, that a city had the right to impose conditions to its consent, and that the acceptance of such conditions was binding upon the telephone company. Relying upon the above holding, plaintiffs contend that there exists between them and the company valid and binding contracts which the Board is without power to impair. Plaintiffs urge that, by giving to them the power to refuse permission to the company to construct lines within their corporate limits, and therefore power to impose conditions upon the grant of such permission, the Constitution has lodged in plaintiffs the exercise of police power; and that, to the extent to which such power has been lodged in them, the Constitution has restricted the exercise of such power by any other state agency. Certainly, if this section of the Constitution has conferred upon these cities the power to fix charges for public service as a condition to allowing plaintiff to enter such cities, then a binding contract exists. City of Watertown v. Watertown Light & Power Co., 42 S. D. 220, 173 N. W. 739; Southern Iowa Electric Co. v. City of Chariton, 254 U. S. ...., 41 Sup. Ct. Rep. 400, 65 L. Ed. ——.

[3]   Of course it is conceded that the Constitution does not expressly confer such police power upon municipalities, and that, if it is conferred, it is by implication. Courts should hesitate to

hold that a sovereign power of the state, the free exercise of which by the proper agencies of the state might be essential to the general welfare of the state, such as the police power, has, by implication, been taken from legislative control and lodged, even in part, with the municipalities of the state. Courts should also hesitate to hold that, by implication, the Constitution has conferred upon municipalities a power through the exercise of which it might be able to confiscate the property of public service corporations. As stated by the late Chief Justice White, in City of San Antonio v. San Antonio Public Service Co., 254 U. S. ——, 41 Sup. Ct. 428:

"The fact is that all the contentions of the city * * * but illustrate the plainly erroneous theory upon which the entire argument for the city proceeds; that is, that limitations by contract upon the power of government to regulate the rates to be charged by a public service corporation are to be implied for the purpose of sustaining the confiscation of private property."

[4] By legislative enactment, certain police powers are expressly conferred on municipalities; but to so confer a power subject to future legislative control is far different from conferring indefinite powers by implication.

[5] To give the above section of the Constitution a construction that might and certainly frequently would bring about situations under which public service corporations enjoyed rights in conflict with the general well-being of the state would render it inconsistent with section 4, art. 17, of such Constitution, which specifically provides that—

"The exercise of the police power of the state shall never be abridged or so construed as to permit corporations to conduct their business in such manner as to infringe the equal rights of individuals or the general well-being of the state."

The state of Pennsylvania has constitutional provision (Const. art. 17, § 9) the same as section 3, art. 10, supra. In a case on all fours with this one, except that street car rates were involved, being the case of City of Scranton v. Public Service Commission, 268 Pa. 192, 110 Atl. 775, the court declared:

"While the constitutional provision requiring the consent of a municipality to the construction of a street railway within its limits is clear and can have but one meaning, it must be read in

connection with the equally clear third section of article 16 of the Constitution, which declares that—

" 'The exercise of the police power of the state shall never be abridged or so construed as to permit corporations to conduct their business in such manner as to infringe the equal rights of individuals or the general well-being of the state.' * * *

"Street passenger railways have become necessities. * * * Though this is so, they cannot be operated in any municipality without its consent. With such consent they may be, and, as between the local authorities and the railway companies, there may be attached to it terms and conditions which must be performed by the companies, but a municipality may not annex such terms to its consent as will deprive the commonwealth of its inherent police power to see that a street passenger railway company is not prevented from serving the public by the municipality's enforcement of conditions in a consenting ordinance that have become impossible of performance. What may have been a reasonable rate of fare at the time of the passage of a consenting ordinance may, under changed economical conditions, become confiscatory, and a street passenger railway company may not be able to serve the public on account of insufficient revenues, based upon the fare fixed in the ordinance. When such situation arises, as it has arisen and will arise again, there must be relief somewhere to the public, and it lies in the police power of the state, which is never to be abridged nor bartered away."

See, also, City of San Antonio v. San Antonio Public Service Co., supra.

In City of Woodburn v. Public Service Commission, 82 Or. 114, 161 Pac. 391, L. R. A. 1917C, 98, the court said:

"When examining the contention urged by the municipality, we must not lose sight of the fact that the right to regulate rates by changing them from time to time as the welfare of the public may require is essentially a police power; and, since the right to regulate rates is an inherent element of sovereignty, when seeking to ascertain whether this part of the police power has been conferred upon the city, either with or without limitation, we are constantly governed by the rule that the delegation of the sovereign right to regulate rates must be clear and express, and all doubts must be resolved against the city. Home Tele-

phone Co. v. Los Angeles, 211 U. S. 265, 29 Sup. Ct. 50, 53 L. Ed. 176; Milwaukee Elec. Ry. v. Wisconsin R. R. Com., 238 U. S. 174, 35 Sup. Ct. 820, 59 L. Ed. 1254; Benwood v. Public Service Commission, 75 W. Va. 127, 83 S. E. 295, L. R. A. 1915C, 261; State ex rel. Webster v. Superior Court, 67 Wash. 37, 120 Pac. 861, L. R. A. 1915C, 287, Ann. Cas. 1913D, 78; City of Manitowoc v. Manitowoc & Northern Traction Co., 145 Wis. 13, 129 N. W. 925. Quoting from Charleston Consol. Ry. & Lighting Co. v. City Council, 92 127, 75 S. E. 390.

" 'The state's power to regulate by compulsion the charges of public service corporations is one of such vast and increasing importance to the public that the courts will not attribute to the state the intention to part with it or to delegate it unless the intention is clearly and unmistakably expressed.' "

[6] We are of the opinion that section 3, art. 10, gave to plaintiffs no police power whatsoever. We should so hold even in the absence of section 4, art. 17, as we agree that any delegation of police power must be clear and express, and certainly, in the light of section 4, art. 17, we could not hold that the people intended, by section 3, art. 10, to do by implication the very thing which, by section 4, art. 17, they forbid the Legislature from doing. We are therefore of the opinion that, while plaintiffs had the right, when granting permission to the company to establish lines within their territory, to impose conditions which, when accepted, became binding contracts, such conditions must not conflict with the provisions of section 4, art. 17, of the Constitution. Southern Iowa Electric Co. v. City of Chariton, 254 U. S. ——, 41 Sup. Ct. Rep. 400, 65 L. Ed. ——; City of Lead, etc., v. Western Gas & Fuel Co., 44 S. D. 510, 184 N. W. 245, handed down herewith.

It follows that the Board acted within its jurisdiction in making the orders sought to be reviewed, and that the present proceedings should be dismissed. They are dismissed, at plaintiffs' costs.