THE CITY OF LEAD, et al., Respondents, v. THE WESTERN
GAS & FUEL COMPANY, Appellant.

(184 N. W. 245.)

(File No. 4867.    Opinion filed August 31, 1921.    Rehearing granted
November 22, 1921.)

**Municipal Corporations—Time Contracts for Gas Rates Subsequently
Becoming Confiscatory—Gas Company's Proposal to Close
Down or Sell Plant, Cities' Suit to Restrain Cessation of Operation, Receiver Appointed—Forfeiture Clause Under Ordinances—Constitution Re Irrevocable Grant, Non-abridgement
of Police Power, Applied—Ordinances, Whether "Contracts,"
Or Irrevocable—Receivership Disallowed.**

Where cities of Lead and Deadwood had been furnished gas
by defendant and predecessors under franchise ordinances, one
for 20, one for 50 years, with maximum rates fixed under each
ordinance; and in 1918 (8 and 4 years respectively after ordinances passed) a temporary maximum higher rate was authorized by respective city ordinances to continue 18 months after
close of World War and consummation of Peace; defendant gas
company having on June 17, 1920, offered said cities respectively
to turn over to them the gas plant without charge to the cities,
to be operated by them at their risk and expense until October
first succeeding, defendant cities to collect gas bills payable July
1st and to pay for unconsumed gas merchandise and fuel and
supplies used; whereupon plaintiff cities sued to restrain defendant from ceasing operation of plant, a temporary receiver
having been appointed to operate it, defendant's application for
an order vacating an appointment of receiver and requiring
restoration of property having been overruled; it appearing
from defendant's showing that it had suffered an average
monthly loss from January, 1919, to beginning of suit, of nearly
$900; the ordinances providing that default by defendant for
30 days in compliance therewith shall constitute forfeiture of
all its rights and privileges thereunder; plaintiffs claiming that
original ordinance contract rates should continue; defendant
claiming right to discontinue operation of plant but conceding
that it would operate as termination of its rights and privileges
thereunder, and denying cities' power to make a binding irrevocable rate contract; it being conceded by the gas company
that Clause 18 of Sec. 6169, Code 1919, empowering cities to
regulate sale and use of gas, and to so fix and determine price
of gas, and rent of gas meters, the present statutory provision
authorizing said cities to fix prices at which gas should be sold,
while contending that such statute and constitutional provisions
do not permit said cities to divest themselves for a definite
period of their power to fix rates;—**held**, under Const., Art. 6,

Sec. 12, providing that no law making any irrevocable grant of privilege, franchise or immunity, shall be passed, and Art. 17, Sec. 4, providing that exercise of police power of state shall never be abridged or so construed as to permit' corporations to conduct business in manner to infringe equal rights of individuals or general well-being of state,—that if under these provisions Legislature could not vest authority in municipal corporations to fix gas rates irrevocably during a definite period, or if said provisions act directly upon municipal corporations, the result is similar, and there would be no municipal authority to enter into such irrevocable contract; and **held,** further, that the answer to this question whether contracts existed empowering said cities to enforce the alleged confiscatory gas rates, depends upon whether said ordinances were contracts; that they were not contracts, being prohibited by Art. 6, Sec. 12; that such want of power and considerations of state public policy exclude existence of right to enforce as result of the obligation of a contract the concededly confiscatory rates involved; particularly in view of the fact that such asserted right in derogation of state law and of public policy is urged by municipal corporations whose every power depends upon state law; nor may a municipality annex such terms to its consent as will deprive state of its inherent police power to see that a gas company is not prevented from serving the public by the municipality's enforcement of conditions in a consenting ordinance that have become impossible of performance; that what may have been a reasonable gas rate at time of passage of such ordinances may, under changed economic conditions become confiscatory, and a gas company may not be able to serve the public on account of insufficient revenues based upon such ordinance rates; that when such situation arises, as in the instant case, public relief lies in police power of state, which is never to be abridged nor bartered away.   Under these announced principles, there was no contracts as to gas rates between defendant-appellant and the respondent cities; that the duty of said gas company to charge only a reasonable rate, and thus respect governmental authority to regulate in the public interest, by fixing such reasonable rate as will safeguard rights of private owners, are interdependent and reciprocal.   City of Watertown v. Watertown Light & Power Company, 42 S. D. 22, overruled wherein it held that a contract as to rates existed.   **Held,** further, that, the foundation on which respondent cities' theory rests being removed, trial court erred in appointment of such receiver, and the order therefor was improvidently granted.

Appeal from Circuit Court, Lawrence County.   Hon. JAMES MCNENNY, Judge.

Action by the City of Lead, a Municipal Corporation, the City of Deadwood, a Municipal Corporation, William E. Adams and E. A. Steinback, residents and gas consumers in said cities respectively, against the Western Gas & Fuel Company, a corporation, to restrain defendant from ceasing the operation of its gas plant. From an order refusing to vacate an order appointing a temporary receiver to operate defendant's gas plant, defendant appeals. Reversed.

*John R. Russell, Rice & Wishart, Adams, Follansbee, Hawley & Shorey,* for Appellant.

*E. A. Steinback,* and *Norman T. Mason,* for Respondents.

Appellant cited, re appointment of received pendente lite: 34 Cyc. 35; Louisville v. Louisville H. Tel. Co. 31 Ann. Cases, 1240. To point that cities have no right to establish gas rates as herein contended for, cited: Sec. 6169, Code 1919, Par. 18; nor unless legislature has specificallly granted such power, cited: Home Tel. & Tel. Co. v. Los Angeles, 211 U. S. 265; Milwaukee Elec. P͏. ᵒ. ͭ ᷉ ᐟᐠᐣ. v. Wisconsin R. R. Comm., 238 U. S. 174; Muscantine Lighting Co. v. Muscatine, 41 Sup. Ct. Repr., 400; San Antonio v. San Antonio Police Service Co., U. S. Adv. Opinions 1920-1, No. 13, May 15, 1921, p. 518. To point that if these ordinances re gas rates are invalid and unenforceable as to plaintiffs, they are likewise as to defendant, cited: Portland v. Bituminous Pav. Co. (Ore.) 52 Pac. 28, 44 L. R. A. 527; 19 R. C. L. 1063. To point that even under a statute (such as Sec. 6248, Code 1919, 20 year period,) it will not be upheld for that period, cited: 4 Cook on Corp. p. 3490; Manhattan Trust Co. v. Dayton, 59 Fed. 327. To point that equity will not compel public service corporations to continue operations at actual loss unless franchise imposes the obligation in express language, cited: Brooks-Scanlon Co. v. Railroad Com., U. S. Sup. Ct., Adv. Sheets Nos. 8 and 9, Mch. 1 to 15, 1921, p. 213.

Respondents cited, to point that under acceptance of its franchise a gas company contracts to perform duty for the public by furnishing gas, which contract is enforceable by courts: 20 Cyc. p. 1159-50. That city's power to provide for lighting, etc., and to grant franchises and rights to corporations for such purposes and to regulate same, is granted by Sec. 6169, Code 1919, Par. 18. That city may regulate and fix maximum gas rates bind-

ing on grantee of franchise, though it or the law reserves right in city to change rates, citing: Muscatine Lighting Co. v. Muscatine, 256 Fed. 929. That the fact that a franchise does not pay does not exonerate street railway company from continued compliance with franchise contract, citing: Columbus Co. v. Columbus, 249 U. S. 399, 6 A. L. R. 1648; Note to same. That under such an ordinance as here involved, rights of parties are determinable by the contract, citing: Cincinnati v. Public Utilities Com., 121 N. E. 688, 3 A. L. R. 705.

GATES, J. The cities of Lead and Deadwood have been furnished gas by the defendant and its predecessors under franchise ordinances passed by those cities, the one a 20-year franchise from July, 1910; the other a 50-year franchise from January, 1914. In each ordinance the maximum rate of $1.60 per thousand was fixed, or $1.50 per thousand if paid within a certain time. In the spring of 1918 a temporary maximum rate of $1.95 per thousand feet, or $1.85 per thousand if paid within a certain time, was authorized by city ordinances to continue 18 months after the close of the World War and the consummation of peace.

On June 17, 1920, the defendant sent to the mayors of plaintiff cities the following telegram:

"The bondholders have operated the gas plant at Deadwood and Lead for several years at a loss hoping conditions would change; it is impossible for them to secure money to operate further, so will close down permanently July 1, 1920. If desired we will turn over the gas plant without charge to the cities of Deadwood and Lead to be operated by them at their own risk and expense until October 1st; property to be returned in as good condition as when taken over; you to pay us for unconsumed gas merchandise and fuel and supplies used. Collect bills payable July 1st for us. Kindly wire us your decision."

Plaintiff cities thereupon began this action to restrain defendant from ceasing the operation of the plant. A temporary receiver was appointed, who has since been in the operation of the plant. Defendant applied for an order vacating the appointment of the receiver and requiring the restoration of the property to it. Upon the defendant's showing, which was undisputed, the defendant had suffered a monthly loss from January, 1919, to the

beginning of this action of from $221.59 to $1,998.77 in the operation of its plant, with the exception of one month, where the gain was $218.92. The average monthly loss was nearly $900. The appeal is by defendant from an order refusing such application.

The theory of respondent cities is that the franchise ordinances, which fixed the maximum rate allowed to be charged for gas, amounted to a contract which can be enforced even though by reason of changed conditions the enforcement of it amounts to a confiscation of appellant's property. Respondents deny the right of appellant to discontinue operation of its plant, even though the franchise ordinances provide, as they do, that default by it for 30 days in compliance with the ordinances shall constitute a forfeiture of all its rights and privileges thereunder. They also contend that, even if the appellant had the right to discontinue the service of gas, they were entitled to a reasonable notice before such intent should be carried out, and that 13 days' notice thereof was not a reasonable notice.

The appellant contends that it is lawfully entitled to discontinue operation of its plant at any time, conceding that such discontinuance would operate as a termination of all its rights and privileges under the ordinances. It also denies the power of the respondent cities, under the law, to make a binding irrevocable contract fixing rates. It contends that the appointment of receiver was improvidently granted, and that mandamus or injunction would have been the remedy available to respondent cities.

It is conceded by appellant that clause 18 of section 6169, Rev. Code 1919, is the present provision of statute, which authorized respondent cities to fix the price at which gas should be sold, but it contends that such statute and the constitutional provisions herein cited do not permit the respondent cities to divest themselves for a definite period of their power to fix rates.

Section 12, art. 6, of our Constitution provides:

"No * * * law * * * making any irrevocable grant of privilege, franchise or immunity, shall be passed."

Section 4, art. 17, provides:

"The exercise of the police power of the state shall never be abridged or so construed as to permit corporations to conduct

their business in such manner as to infringe the equal rights of individuals or the general well being of the state."

If by reason of these provisions there was no power in the Legislature to vest authority in municipal corporations to fix gas rates which should be irrevocable during a definite period, or if these constitutional provisions act directly upon the municipal corporations, the result is the same, and there would be no municipal authority to enter into such an irrevocable contract.

In City of San Antonio v. San Antonio Public Service Co., 254 U. S. ——, 41 Sup. Ct. 428, 65 L. Ed. ——, the late Chief Justice said:

"It follows that the solitary question to be considered is whether a contract existed empowering the city to enforce the confiscatory rate. Primarily the answer to that question must depend upon whether the ordinance of 1899, fixing the five-cent rate, was a contract. That it was not, and could not be, we are of opinion is the necessary result of the provision of section 17, article 1, of the state Constitution, existing in 1899, prohibiting 'any irrevocable or uncontrollable grant of special privileges,' etc., when considered in the light of the irrevocable and uncontrollable elements which must necessarily inhere in the ordinance of 1899 to give it the contract consequence relied upon."

In Southern Iowa Electric Co. v. City of Chariton, 254 U. S. ——, 41 Sup. Ct. 400, 65 L. ed. ——, a case resting upon a statutory provision, "And these powers shall not be abridged by ordinance, resolution or contract," the Chief Justice said:

"The total want of power of the munipicalities here in question to contract for rates, which is thus established, and the state public policy upon which the prohibition against the existence of such authority rests, absolutely exclude the existence of the right to enforce, as the result of the obligation of a contract, the concededly confiscatory rates which are involved, and therefore conclusively demonstrate the error committed below in enforcing such rates upon the theory of the existence of contract. And, indeed, the necessity for this conclusion becomes doubly manifest when it is borne in mind that the right here asserted to contract in derogation of the state law and of the rule of public policy announced by the court of last resort of the state is urged by

municipal corporations whose every power depends upon the state law."

In City of Scranton v. Public Service Commission, 268 Pa. 192, 110 Atl. 775, the court, after quoting a constitutional provision exactly like the above quoted portion from § 4, art. 17, said:

"But a municipality may not annex such terms to its consent as will deprive the commonwealth of its inherent police power to see that a street passenger railway company is not prevented from serving the public by the municipality's enforcement of conditions in a consenting ordinance that have become impossible of performance. What may have been a reasonable rate of fare at the time of the passage of a consenting ordinance may, under changed economical conditions, become confiscatory, and a street passenger railway company may not be able to serve the public on account of insufficient revenues, based upon the fare fixed in the ordinance. When such situation arises, as it has arisen and will arise again, there must be relief somewhere to the public, and it lies in the police power of the state, which is never to be abridged nor bartered away."

See also, the opinion in City of Mitchell v. Board of Railroad Commissioners, 44 S. D. 430, 184 N. W. 246, handed down herewith.

It is very clear to us that we should follow the authorities above cited in the solution of the matter before us, and that in so doing it is clear that there was no contract as to gas rates between the appellant and the respondent cities. Their mutual rights in that behalf are thus summarized in City of San Antonio v. San Antonio Public Service Co., supra:

"The duty of an owner of private property used for the public service to charge only a reasonable rate, and thus respect the authority of government to regulate in the public interest, and of government to regulate by fixing such a reasonable rate as will safeguard the rights of private ownership, are interdependent and reciprocal."

This conclusion necessitates the overruling of that portion of our decision in City of Watertown v. Watertown Light & Power Co., 42 S. D. 220, 173 N. W. 739, which held that a contract as to

rates existed. It may properly be stated that no question of constitutional inhibition was there raised.

Inasmuch as the foundation upon which the theory of respondent cities rests is removed, it follows that the trial court erred in the appointment of a receiver to operate appellant's plant, and that the order therefor was improvidently granted. The decision of other questions raised is not necessary at this time. It is suggested, as was suggested in the San Antonio case, that animosities be laid aside, and that the parties should agree upon a reasonable rate for the furnishing of gas by appellant, fair to the cities and other consumers, and fair to appellant.

The order appealed from is reversed.