281 N.W.2d 72 (1979)
In the Matter of Establishing CERTAIN TERRITORIAL ELECTRIC BOUNDARIES Within the State of South Dakota (ABERDEEN CITY VICINITY) (F-3111).
NORTHERN ELECTRIC COOPERATIVE, INC., & Brown County, South Dakota, Appellants,
v.
NORTHWESTERN PUBLIC SERVICE COMPANY, Respondent.
Nos. 12327, 12328.
Supreme Court of South Dakota.
Argued January 18, 1979.
Decided June 21, 1979.
*73 C. W. Hyde, Aberdeen, for appellant Northern Elec. Cooperative, Inc. (# 12327).
Michael T. Hogan, of Maloney, Kolker, Fritz, Hogan & Johnson, Aberdeen, for appellant Brown County (# 12328); Dennis Maloney, of Maloney, Kolker, Fritz, Hogan & Johnson, Aberdeen, on the brief.
M. D. Lewis, Huron, Ray M. Schutz, of Siegel, Barnett, Schutz, O'Keefe, Jewett & King, Aberdeen, for respondent Northwestern Public Service Co.; Alan D. Dietrich, Huron, on the brief.
*74 Judith K. Meierhenry, of Meierhenry, DeVany, Kruger & Meierhenry, Vermillion, for respondent Public Utilities Commission; Ben Stead, Asst. Atty. Gen., Pierre, on the brief.
FOSHEIM, Justice.
This case involves the assignment of approximately a fifty-square-mile territory in the Aberdeen vicinity for electric service pursuant to the provisions of SDCL 49-34A.
The Public Utilities Commission (PUC) assigned most of the area to Northern Electric Cooperative, Inc. (NEC). Northwestern Public Service Company (NWPS) appealed that determination to the circuit court. The trial court reversed and directed the PUC to assign the disputed area in accordance with its opinion. NEC appeals from that decision. The circuit court also assigned a shredder facility, which belongs to Brown County, to the NWPS area. Brown County appeals from that decision.
Appellant NEC is a rural electric cooperative and respondent NWPS is an investor-owned electric utility. NWPS began serving customers in the Aberdeen vicinity in the early 1920s. NEC began operations in 1945 and extended its lines into Brown County and surrounding counties. In 1975, the PUC ordered a hearing to determine which areas the two utilities should serve pursuant to SDCL 49-34A-42 through 44. At this hearing the PUC received evidence from both parties, from its own staff, and from an engineering consulting firm hired by the PUC. NWPS claimed that under these statutes it had the right to serve all customers it was serving on March 21, 1975. It also claimed that use of the equidistant concept, SDCL 49-34A-43, would give it certain areas within the disputed territory. NEC claimed that the lines of the two utilities were so intertwined within the entire disputed territory that the equidistant concept could not reasonably be applied, and that the five conditions listed in SDCL 49-34A-44 should be used to determine the service areas. NWPS argued that the disputed territory should be divided into smaller areas each of which should be evaluated as to how the lines were intertwined.
The PUC accepted the NEC contention. The parties presented evidence concerning the five criteria set out in SDCL 49-34A-44:
(1) The proximity of existing distribution lines to such assigned territory, including the length of time such lines have been in existence;
(2) The adequacy and dependability of existing distribution lines to provide dependable, high quality retail electric service;
(3) The elimination and prevention of duplication of distribution lines and facilities supplying such territory;
(4) The willingness and good faith intent of the electric utility to provide adequate and dependable electric service in the areas to be assigned;
(5) That a reasonable opportunity for future growth within the contested area is afforded each electric utility.
NWPS's evidence tended to show that it had electric lines in existence for a longer period of time than NEC in much of the disputed territory and that its lines were closer to portions of the territory. NWPS's evidence also indicated it could adequately and dependably serve these areas, that construction of lines by NEC would duplicate NWPS's lines already in place, and that in order to have a reasonable chance for growth in the area NWPS would have to receive more of the disputed territory than the PUC gave it. NEC's evidence on these criteria indicated that its lines were newer than those of NWPS and thus more reliable. NEC disputes the priority of time interpretation of the circuit court as to the first criterion of SDCL 49-34A-44 and contends that the length of time lines have been in existence should give preference to newer rather than older lines, since new lines are more dependable.
On the duplication question, NEC presented evidence that NWPS's lines might need upgrading, which NEC lines would not require. NEC considers such upgrading to be unnecessary duplication. On the fifth criterion, that reasonable opportunity *75 for future growth be afforded each utility, NEC claims that because of its heavy loads in the summer it will be unable to adequately balance its load without a significant amount of the disputed territory.
On appeal NEC contends the legislature granted it a right to compete for new customers within three miles of Aberdeen by its enactment of SDCL 49-41-7 and 8 (repealed by Sess.L.1975, ch. 283, § 59), and that such a right is a franchise or "franchise-like" grant protected by the constitution. NEC argues that because it is a franchise, the privilege cannot be constitutionally taken away. As we recently stated in In re Establishing Territorial Boundaries (Mitchell area), S.D., 281 N.W.2d 65 (1979), the legislature is without power to grant irrevocable franchises because of S.D. Const. art. VI, § 12. It is settled law that when such a constitutional provision exists any special privilege or franchise granted by the legislature is taken subject to the power to revoke. Bienville Water Supply Co. v. Mobile, 186 U.S. 212, 22 S.Ct. 820, 46 L.Ed. 1132 (1920); Hamilton Gaslight & Coke Co. v. City of Hamilton, 146 U.S. 258, 13 S.Ct. 90, 36 L.Ed. 963 (1892). We came to a similar conclusion, under art. VI, § 12, in City of Lead v. Gas & Fuel Co., 44 S.D. 510, 184 N.W. 244 (1921). We now reaffirm that franchise rights conferred upon a utility by the state are subject to control by the legislature. See also Missouri River Telephone Co. v. City of Mitchell, 22 S.D. 191, 116 N.W. 67 (1908). The rights granted NEC under SDCL 49-41-7 and 8 are not irrevocable franchises.
NEC also contends that SDCL 49-34A operates to exercise the power of eminent domain without compensation. We do not agree. The repealed statutes, SDCL 49-41-7 and 8, granted utilities only the right to compete for customers within a three-mile area of a municipality. They did not give NEC or any other utility an exclusive grant. The revised statute, SDCL 49-34A, gave the utilities the additional right to exclusively serve customers within their assigned service areas. SDCL 49-34A-42. Legislative history reveals that all the electric utilities wanted an allocation system. This may be considered in determining the structure and scheme of the act. State v. Douglas, 70 S.D. 203, 16 N.W.2d 489 (1944). In order for the legislature to grant exclusive franchises, it was necessary to assign boundaries. It delegated that responsibility to the PUC subject to well-defined guidelines. SDCL 49-34A was not designed to take away any utilities' service area. Where two utilities served the same area, however, and had intertwining lines, it was necessary to set a boundary as a regulatory measure. Public utility companies unquestionably take franchises subject to regulations by the legislature and the PUC. SDCL 49-34A-4.
The delineation between "taking" and "regulating" is discussed in City of Milbank v. Dakota Central Telephone Co., 37 S.D. 504, 159 N.W. 99 (1916). In that case the board of railroad commissioners ordered a telephone company giving long-distance telephone service to connect its lines with a local exchange so that the local exchange could transmit and receive long-distance calls. The former company contended the ordered connection would deprive it of its property without due process of law. It further argued that to require it to connect its exchange with that of the local company was an exercise of the power of eminent domain without compensation as prohibited by our constitution. Our decision stated:
We are satisfied that the connecting of telephone exchanges, in order to facilitate the transmission of messages, and therefore advance the purpose for which the public service franchises are granted, is not an exercise of the power of eminent domain, but is entirely analogous to the power exercised by the Railroad Commission in ordering connecting switches between competing lines of railway; that, instead of being an exercise of power of eminent domain, it is a mere regulation of a public service corporation, if not under an implied power resulting from the nature of the franchise enjoyed by the corporation, then under the police powers of the state. *76 City of Milbank, 37 S.D. at 507, 159 N.W. at 100.
We conclude that designation of boundary lines, as part of an allocation system, is a regulatory procedure that utility companies accept as part of the franchise, and is not within the purview of constitutional provisions forbidding the taking of private property without compensation. Chicago & N. W. Ry. Co. v. Dougherty, 39 S.D. 147, 163 N.W. 715 (1917).[1]
This brings us to NEC's last contention, that the circuit court incorrectly applied SDCL 49-34A-44 to the facts as they appeared in this case. SDCL 49-34A-44 provides that in those areas where, on March 21, 1975, the existing electric lines of two or more electric utilities were so intertwined that the equidistant concept could not be applied, the commission shall, after hearing, determine the boundary of the assigned service areas for the electric utilities involved. The PUC determined that the NEC and NWPS lines were so intertwined that the equidistant concept could not reasonably be applied. Having made that determination, the PUC was required to assign service areas guided by the criteria of SDCL 49-34A-44.
The trial court held that the guideline in SDCL 49-34A-44(1) "including the length of time such lines have been in existence," conferred a seniority consideration upon the longer existing NWPS lines. NEC argues that the meaning of the statute is to give newer lines priority because they are better equipped to serve the customer. All of the guidelines must be read together. When the disputed part of condition (1) is read with the other criteria we see a legislative intent that pioneering investment should be favorably considered, but that it must be balanced with the adequacy and dependability of existing distribution lines to provide dependable, high quality retail electric service. It is the province of the PUC to make these determinations. In making that determination, the PUC must apply the definitions found in SDCL 49-34A-1 including "electric lines"[2] and "electric service."[3]Haas v. Independent School Dist. No. 1 of Yankton, 69 S.D. 303, 9 N.W.2d 707 (1943).
SDCL 49-34A-42 and 44, when read separately, seem contradictory. Obviously, the PUC cannot set boundaries under the guidelines of SDCL 49-34A-44 without disrupting rights to serve customers that may have vested under SDCL 49-34A-42. It is our duty to reconcile any such apparent contradiction and to give effect, if possible, to all of the provisions under consideration, construing them together to make them harmonious and workable. North Central Investment Co. v. Vander Vorste, 81 S.D. 340, 135 N.W.2d 23 (1965). This requires that the exclusive rights provision of SDCL 49-34A-42, as well as the equidistant concept of SDCL 49-34A-43, must yield to a boundary determination according to the guidelines of SDCL 49-34A-44, whenever the PUC finds that the utilities' lines are intertwined. Having determined that the electric lines were intertwined in the entire disputed area, the PUC was required to determine service boundaries according to the SDCL 49-34A-44 guidelines.
We do not intimate what the findings of the PUC should be. Our only concern is that the Commission's discretion be exercised under the established rules of law, State v. Richards, 61 S.D. 28, 245 N.W. 901 (1932), which require that the PUC lend credence to the guidelines established in the statute, Valley State Bank of Canton v. Farmers State, 87 S.D. 614, 213 N.W.2d 459 (1973), and that its findings be supported by substantial evidence upon the whole record, *77 City of Brookings v. Dept. of Environ. Prot., 274 N.W.2d 887 (S.D.1979); Application of Ed Phillips and Sons Company, 86 S.D. 326, 195 N.W.2d 400 (1972).[4] The conclusions and decision of the PUC were in some measure based on evidence, inferences and findings in excess of its authority. SDCL 1-26-36(1) and (2).
We conclude the matter should be remanded to the PUC for reconsideration in the following respects:
(1) In determining the utility to which an area should be assigned "the length of time" provision is to be balanced as a priority with the other guidelines found in 49-34A-44 and particularly subparagraph (2) thereof.
(2) The statutory language indicates that in making assignment determinations the PUC should confine its consideration to the territory in dispute according to the guidelines, to the exclusion of concerns outside the disputed territory.
(3) Consideration of the "reasonable opportunity for future growth" condition, found in SDCL 49-34A-44(5), should not involve highly remote and speculative factors such as the PUC finding regarding the estimated energy needs by 1983 for irrigation in the Oahe project.
The appeal of Brown County shows that on March 21, 1975, NWPS was providing electric service to the contractor constructing a shredder facility on the site for Brown County. Brown County's brief acknowledges that the county authorized NWPS to provide such service, but denied any approval for NWPS to provide service for the shredder operation. The PUC assigned the facility to NEC. The circuit court reversed and assigned it to NWPS. The argument centers around whether there was an exclusive right vested in either electric utility based on service to a customer on March 21, 1975. Since we take the view that a determination of intertwining lines creates exceptions to SDCL 49-34A-42 and 43, it follows that service to the shredder facility, like that to all other parts of the disputed area, must be determined according to the guidelines in SDCL 49-34A-44. In this regard, we note that the PUC may have to consider whether the shredder facility is a large new customer as defined by SDCL 49-34A-56.
The order of the trial court is affirmed insofar as it remands the matter back to the PUC, but is modified insofar as it directs the PUC to assign disputed territory. Such assignment shall be made by the PUC, based on its findings, in accordance with this decision.
WOLLMAN, C. J., concurs in part and dissents in part.
MORGAN and HENDERSON, JJ., and YOUNG, Circuit Judge, concur.
YOUNG, Circuit Judge, sitting for DUNN, J., disqualified.
WOLLMAN, Chief Justice (concurring in part and dissenting in part).
I agree with the majority opinion insofar as it affirms the trial court's judgment that the matter must be remanded to the Public Utilities Commission for a redetermination of the service boundaries.
I do not agree, however, that the exclusive rights provision of SDCL 49-34A-42 must yield to the guidelines of SDCL 49-34A-44. The issue was not raised in the assignment of errors nor was it discussed in appellants' brief.
The application of the equidistant concept set forth in SDCL 49-34A-43 is made subject to the explicit exception set forth in SDCL 49-34A-44. I see no such specific exception vis-a-vis the exclusive right concept set forth in SDCL 49-34A-42, nor do I see any compelling reason to hold that the exclusive right concept cannot exist with *78 the concepts set forth in SDCL 49-34A-44. Under the facts of this case I see no particular conflict between the two concepts, and therefore I would not hold that the exclusive right concept must fall.
SDCL 49-34A-42 speaks in terms of "serving a customer." I see no express or implied exceptions based upon the nature of the customer or the extent or duration of the service provided prior to March 21, 1975. The holding in Willrodt v. Northwestern Public Service Company, S.D., 281 N.W.2d 65, is to the effect that consumer preference is irrelevant under the assignment of service areas statutes. Accordingly, I would affirm the trial court's decision in this regard.
NOTES
[1] See also State v. Iowa Telephone Co., 175 Iowa 607, 154 N.W. 678 (1915).
[2] (5) "Electric line," any line for conducting electric energy at a design voltage of twenty-five thousand volts phase to phase or less and used for distributing electric energy directly to customers; SDCL 49-34A-1.
[3] (6) "Electric service," electric service furnished to a customer for ultimate consumption, but not including wholesale electric service furnished by an electric utility to another electric utility for resale; SDCL 49-34A-1.
[4] We note that SDCL 1-26-36 has been amended, effective July 1, 1978. The standard for review of sufficiency of the evidence was changed from "unsupported by substantial evidence on the whole record" to "clearly erroneous." See Huffman v. Bd. of Ed. of Mobridge Ind. Sch. Dist., etc., 265 N.W.2d 262 (S.D.1978).