**NANCY THIELEN SCHOOL
OF PIANO, Appellant,**

**v.**

**STATE BOARD OF EQUALIZATION,
Appellee,**

**and**

**Department of Revenue.**

**No. 17585.**

Supreme Court of South Dakota.

Considered on Briefs Jan. 16, 1992.

Decided June 3, 1992.

Wayne F. Gilbert, Johnson, Huffman P.C., Rapid City, for appellant.

Mark Barnett, Atty. Gen., David D. Wiest, Asst. Atty. Gen., Pierre, for appellee.

WUEST, Justice.

Nancy Thielen School of Piano appeals the circuit court's dismissal of its appeal from a decision of the South Dakota State Board of Equalization.

### FACTS

Nancy Thielen filed an application for tax exempt status for her school, the Nancy Thielen School of Piano (hereinafter "Thielen"). The Pennington County Director of Equalization recommended denial of the application to the Pennington County Board of Equalization.[1] On May 14, 1990, the Board of County Commissioners for Pennington County, acting as the County Board of Equalization, voted to grant Thielen tax exempt status.

On approximately June 1, 1990, the Rapid City Area School District Board of Education appealed the decision of the Pennington County Board of Equalization to the State Board of Equalization (hereinafter "SBE"). On August 17, 1990, SBE voted to reverse the decision of the Pennington County Board of Equalization and to revoke the tax exempt status. A secretary to the chairman of SBE mailed copies of SBE's decision by first class mail to all interested parties.

On September 14, 1990, Thielen appealed the decision of SBE by filing a notice of appeal with the circuit court for the Seventh Judicial Circuit. On December 19, 1990, SBE filed a motion to dismiss the circuit court appeal. SBE argued that

---

1. By statute, "[t]he county commissioners, or a majority of them, shall constitute a board for the equalization of the assessment of property." SDCL 10–11–25.

Thielen's notice of appeal was untimely and therefore the circuit court lacked jurisdiction. The circuit court accepted briefs on the issue and then granted the motion to dismiss the appeal for lack of subject matter jurisdiction. Thielen appeals.

## DECISION

Thielen contends that the standards for initiating an appeal from a decision of the State Board of Equalization are governed by the provisions of the Administrative Procedures Act ("APA"). The APA provides, at SDCL 1–26–31, that notices of appeal to the circuit court from decisions of an administrative agency must be filed within thirty days of the notice of entry of the final decision of the agency. SBE argues that SDCL chapter 10–11 establishes the appeal procedures for this case.

This Court previously addressed this issue in *Appeal of AT & T Information Systems*, 405 N.W.2d 24 (S.D.1987). In that case, AT & T appealed the decision of the State Board of Equalization to the circuit court. There, the State Board of Equalization argued that the standards and procedures for initiation of the appeal should be governed by the APA. The State Board of Equalization based that argument on its contention that SDCL chapter 10–11 had been impliedly repealed by the adoption of the APA. This Court found that the "repeal by implication" argument was "flawed" because:

> The APA was adopted in most respects between 1966 and 1975. Since that date some amendments have occurred and, as applied to this case, SDCL 1–26–30 was amended in 1978. However, SDCL 7–8–32 was reenacted in 1983. And, SDCL

10–11–43 was reenacted in 1985. It is inherent in the concept of repeal by implication that the statute which is doing the repealing be enacted subsequent to the statutes which are claimed to be repealed. Repeals by implication operate on statutes already existing, not statutes later enacted. Thus, the concept of repeal by implication is not applicable.

*Id.* at 27.

■ In accord with our prior holding in *Appeal of AT & T Information Services,* we again hold that the standards and procedures for the initiation of an appeal from a decision of the State Board of Equalization to a circuit court are governed by SDCL chapter 10–11. As a result, Thielen had only twenty days to file a notice of appeal.

■ However, as an alternative argument, Thielen contends her twenty-day period to file the notice of appeal has not yet begun to run because SBE's decision was not "published." We agree.

The legislature designated that appeals like this one should be taken in the same manner as an appeal from a county commission decision.[2] To appeal from a decision of the county commissioners, one must file an appeal within twenty days after "publication" of that decision.[3] Thus, Thielen's appeal time does not start to run until SBE "publishes" its decision. The term "publish", as it relates to counties, is defined as "publication in the official county newspapers." SDCL 7–18A–1. Because SBE never published its decision, Thielen's appeal time has not yet begun to run.

SBE notes that Thielen clearly had notice because of the notice letter. SBE argues

---

**2.** SDCL 10–11–43 states:

**Appeal from state board of equalization to circuit court.**

Any person, firm, corporation, taxing district, governmental subdivision or agency interested as described in § 10–11–42 may appeal from a decision of the state board of equalization to the circuit court for the county in which the property which is subject of the action is situated. *The appeal shall be taken in the same form and manner as appeals are taken from the decision of the board of county commissioners to such court,* except that the state board of equalization shall become the appellee and shall defend its decision on appeal. (emphasis added)

**3.** SDCL 7–8–29 explains how appeals are taken from a decision of a board of county commissioners. It provides, in pertinent part:

**Time allowed for appeal—Service of notice—Transcript of proceedings.** Such appeal shall be taken within twenty days after the publication of the decision of the board by serving a written notice on one of the members of the board ...

that letter started Thielen's appeal time running. If that argument were accepted it would destroy the bright-line established by the legislature for deciding when the appeal time begins to run for all parties in a case. It would result in an administrative nightmare where every party had their own deadline to file notices of appeal. This would be clearly contrary to legislative intent.

### SUMMARY

SDCL 10–11–43 details the procedure for filing an appeal with the circuit court from a decision of the State Board of Equalization. Such appeals are to be handled like appeals from decisions of the county commissioners. The time to file an appeal from the decision of the county commissioners begins to run from the "publication of the decision of the board." In this case, SBE did not "publish" its decision as that term is defined in SDCL 7–18A–1. Until the decision is published the appeal time does not begin to run. Thus, Thielen's notice of appeal was timely and the circuit court had jurisdiction. We remand this case for a decision on the merits.

SABERS and AMUNDSON, JJ., concur.

HENDERSON, J., concurs with writing.

MILLER, C.J., concurs in result.

HENDERSON, Justice (concurring).

State Board of Equalization did not comply with the statutory mandate. It failed to publish its decision as required by state law. Thielen's time to appeal did not begin to run until the State Board of Equalization published its decision. This Court must stand by controlling precedent. *See, Appeal of AT & T Information Systems*, 405 N.W.2d 24 (S.D.1987). Blackstone early recognized that "it is an established rule to abide by former precedents, where the same points come again in litigation: as well as to keep the scale of justice even and steady." Blackstone, 1 W. Blackstone, Commentaries, 69–70.

Here, the State Board of Equalization would have this Court totally ignore the plain and unambiguous terms of SDCL 10–

11–43 and SDCL 7–8–29. We cannot do so. We are not a weather vane, to be blown about, as the breath of a different advocate hits upon us, to move in a conflicting legal direction. Lawyers, judges, and the people have the right and expectation to see like cases—treated alike.

"Publication" gives the people the right to know of the taxation treatment of each citizen, or class of citizens, in a county. "Publication" is also a public right, established as a fortress against bureaucratic edict. "Publication" advises the public of the activities of a state board, such as the State Board of Equalization. What is it up to? What is its policy? What land is affected? What type of land is being taxed in a certain way and why? Publication informs the citizens of the decisions made by the State Board of Equalization. Therein lie a great social policy. Our Legislature is comprised, as a body, to represent the people. Our Legislature decided, by enacting the two statutes above, that an appeal from the State Board of Equalization "shall be taken in the same form and manner as appeals are taken from the decision of the board of county commissioners ..." SDCL 10–11–43. SDCL 7–8–29 specifies, expressly, that a taxpayer shall take an appeal within twenty days *after the publication of the decision.* These two statutes are to be construed in harmony; in truth and in fact, they are not inharmonious. We, on this Court, as we construe these statutes, *which we have done before,* have a main objective: To ascertain and give effect to the intention of the Legislature. *See, Norgeot v. State,* 334 N.W.2d 501, 503 (S.D. 1983).

Assuming arguendo, that the Legislature's true intent is not absolutely clear, we should examine two further holdings in this Court. It is the duty of the Supreme Court to reconcile any apparent contradiction in statutes and to give effect, if possible, to all provisions under consideration, construing them together to make them harmonious and workable. *Matter of Certain Territorial Elec. Boundaries,* 281 N.W.2d 72 (S.D.1979); *Glenham Ind. School Dist. v. Walworth County Bd. of*

*Ed.,* 78 S.D. 63, 98 N.W.2d 348 (1959) (Interpretation of legislative acts should bring all of its parts into harmony). In interpreting Legislative acts, we should review the pertinent, applicable statutes to determine the intent of the Legislature. Correctly, the holding of the majority opinion has considered the two pertinent statutes, making them harmonious and workable. If, by any reasonable construction, both acts can be reconciled, they should be. *Matter of Sales Tax Refund Applications,* 298 N.W.2d 799 (S.D.1980); *State v. Myott,* 246 N.W.2d 786 (S.D.1976). *See also,* expressions on reasonable construction of statutes to make them harmonious and workable. *Welcome Wagon Intern. v. S.D. Dept. of Revenue,* 318 N.W.2d 5 (S.D.1982); *State v. Hoxeng,* 315 N.W.2d 308 (S.D. 1982); *Matter of Sales Tax Refund Applications, supra.*

Our decision, as announced by this Court today, is not only the law of the case, it is supported by past decisions of this Court. It is the law of the state of South Dakota, and is binding upon the State Board of Equalization and Department of Revenue. Publication was required.

In a recent writing, I ended same with: "Come the revolution." In Congress, July 4, 1776, in a document called the Declaration of Independence, courageous, stouthearted, liberty loving men wrote, inter alia: "He (the King of Great Britian) has erected a multitude of New Offices, and sent hither swarms of Officers to harrass our People, and eat out their substance." Radio, television, newspapers, and spawned lawsuits reflect disgruntlement, if not outrage, on swift changes in South Dakota precipitating confiscatory real estate taxes. Publication of the acts of such a board as the State Board of Equalization, one of the multitude of New Offices in state government in South Dakota, is a protection for the taxpayers of this state. The State Board of Equalization and Department of Revenue cannot mask increased taxation under various guises, for their activities are exposed, in black and white, for the people of our state to see and read, via publication. As thousands of South Dakotans seek redress for real estate tax relief, a loss of publication of activities of these offices in the state capitol, would create a serious predicament for taxpayers—taxpayers whose homes and livelihood are vitally affected by decisions by these governmental offices. Petitions for redress, in the form of filed appeals, spring from (a) an inner belief that excessive taxes will strip the people of their property but can be occasioned only by (b) knowledge of the precise action which is being taken by the state boards. And so, for the people, who granted me this high office, I express: Come hither, you people of state government, you in these offices, and simply tell us, we the people, of what thou wouldst do unto us so that we may, under our state and national constitutions, petition for redress? Or to preclude us from seeking redress? Amendment 1 to the United States Constitution adopted October 1, 1889, by South Dakota State Constitution art. VI § 4, grants the right to petition for redress, i.e., tax appeals. *See also,* Inherent Rights of the People, South Dakota State Constitution art. VI, § 1, which provides that the people of South Dakota have the right " . . . of acquiring and *protecting property* . . . ." (Emphasis added mine). Publication brings about the constitutional right to "protect property." State Constitution adopted October 1, 1889. Yeas: 70,131: nays, 3,267. Hurray for our forefathers.