In re HARDING

(48 N. W.2d 834)

(File No. 9255.  Opinion filed July 26, 1951)

**Bangs & McCullen,** Rapid City, for Appellant.

**Ralph A. Dunham,** Atty. Gen., **William Williamson,** Asst. Atty. Gen. and Counsel for Commission, for Respondent.

**E. V. Morrill,** Sturgis, for City of Faith.

SMITH, J. The request of the city of Faith for the re-installation of the telephone service in the office of its chief of police, located in his home, having been denied by the owner of the telephone utility, the Public Utilities Commission initiated this administrative proceeding which resulted in its order commanding Harding to make the described installation. On appeal to the circuit court, the order of the commission was affirmed, and Harding has prosecuted this appeal from the judgment of the circuit court. The substantial contention is that in the undisputed circumstances, presently to be described, the order of the commission should be vacated as arbitrary, capricious and unreasonable.

The city of Faith subscribed for a telephone in the home of its chief of police in August 1948 for the convenience of the public in communicating with that officer. There was another telephone in his home for which the chief subscribed as an individual. For some time prior to October 1949 the service through the police telephone had been very unsatisfactory and those who desired to talk with the chief of police were using his private telephone. Complaints had been made, and Harding had made attempts to discover the cause of the difficulty. In October 1949 after Harding had

serviced the police telephone, he came upon the wife of the chief of police in a market and bluntly accused her of leaving the police receiver off the hook. His statements and manner so upset her that the chief found her in tears when he arrived home. Thereupon the chief lost his temper, jerked both the police and the private telephone instruments loose, and took them to Harding.

At the November 1, 1949 meeting of the city council, Harding presented a bill against the city of Faith for $26 for damages to his equipment. Although the city rejected the claim, upon advice of the mayor the chief of police paid the amount demanded on December 9, 1949. Charges for the police telephone service had been promptly discharged by the city.

After repeated requests through city officials that the telephone be re-installed had been ignored, the city council adopted and transmitted a resolution to Harding requesting him to install a telephone in the office of the chief of police in his home, and tendered a warrant to Harding covering his charge for installation and rental for one month in advance. His reply was, "I am not interested".

After the telephone had been removed, official comunications reached the chief of police by messenger or through a neighbor's telephone located across the alley in the same block with his home.

At the original hearing before the commission, the foregoing facts, and the consent of the chief of police to the re-installation were evidenced. Thereupon counsel for Harding announced that he would take no exceptions to an order of the commission requiring such an installation if it included a provision for responsibility on the part of the city for a return of the instrument and legally chargeable damages thereto. The report of the commission found the foregoing undisputed facts, and the further fact that "It is clear that a telephone by which the Chief of Police can be reached quickly at all hours is vital to the protection of the community of Faith", and ordered the installation forthwith. The provisions requested by Harding were not included in its order.

Intervening the original determination of the Public Utilities Commission on January 31, 1950 and the final decision of the circuit court from which this appeal is prosecuted, steps were taken which Harding contends have a bearing upon the issue we are considering. A petition for rehearing filed on February 10, 1950 disclosed that Harding had addressed a letter to the mayor and council of Faith on February 6, 1950 indicating his willingness to make the requested installation if the city would pay his regular installation charge, and one month's rental in advance, and would deposit $30 with him as indemnity against future damage to the equipment to be installed. Rehearing was denied. An appeal to the circuit court thereafter taken resulted in a remand to the commission to afford opportunity to establish whether a rule of the utility owner was in effect requiring such a deposit as was requested in the above described letter, and to afford the commission opportunity to pass upon the propriety of such a rule. The commission heard further evidence, readopted its original findings, found that a rule requiring such a deposit as indemnity for damage to equipment was not in effect, concluded that it would be unreasonable for the commission to require such a deposit from the city of Faith in the circumstances, and ordered the installation forthwith.

In connection with a petition for rehearing thereupon filed Harding submitted to the commission a proposed schedule of rules and regulations including a rule reading as follows: "When in the opinion of the company it is necessary a deposit equal to the value of equipment, apparatus and lines furnished may be required as a condition of installation. Such deposit shall be returned to the subscriber upon the termination of the subscriber's right of use in the event the equipment, apparatus and lines are in as good condition as when installed, ordinary wear and tear alone excepted. When such deposit is made the company shall pay to the subscriber interest upon such deposit at the rate of six per cent annum." The petition for rehearing was denied, and as we have indicated, Harding's appeal to the circuit court was disposed of by judgment affirming the order of the commission, and this appeal is from that judgment.

The pertinent powers delegated by the legislature to the Public Utilities Commission include the following:

SDC 52.1302 "The Public Utilities Commission shall have general supervision and control of all telegraph and telephone lines and exchanges constructed and operated in this state, and it shall be the duty of such Commission to inquire into any complaints or unjust discrimination, neglect, or violation of the laws of the state governing such companies, by their owner or owners, or by any of their officers, agents, or employees. Such Commission shall have power to fix individual rates as well as to make schedules of maximum rates, including joint rates to be charged by any telegraph or telephone company or companies for the rent of any line or instrument or for the transmission of any message and for any service in connection therewith, and to make such changes therein from time to time as it may deem reasonable or necessary, and it may exercise any other power necessary to a proper supervision and control of such companies."

SDC 52.0212 "* * * No such change in rates, rules, regulations, or practices shall go into effect until allowed by the Public Utilities Commission."

SDC 52.0259 "The Public Utilities Commission shall have authority to require any common carrier doing business in this state to install any facility necessary for the safety, convenience, and accommodation of the public, including * * * telephone lines and instruments."

█ It is elementary that an owner of a public telephone utility is under a legal obligation to respond impartially to the requests for telephone service of all who are within the field in which he professes to operate. SDC 52.1314; 43 Am.Jur. 586; and 51 C.J. 7. Mr. Harding neither questions this principle nor that in the performance of this duty to the public, he is subject to the supervision and control of the Public Utilities Commission. His position is that the conclusion impelled by the undisputed facts is that the commission has exceeded its powers.

In presenting this contention no claim is made that the city is legally responsible for the discontinuance of this

police telephone service. It is recognized that the city has discharged its every obligation for telephone service, and it is admitted that through the good offices of its mayor, the chief of police was induced to pay the full amount of damage claimed by Harding. Neither is it claimed that the willful or malicious acts of an employee of the city or of a third person operate to relieve the owner of such a public utility of his duty to provide the city with service. The point stressed is that the city is requesting an installation at a place of demonstrated risk of willful or malicious damage to telephone equipment, and to command such an installation, except on condition that the city assume the attendant risk, is unreasonable in the sense of being arbitrary and capricious.

■    In considering the function of our courts in reviewing the proceedings of the Public Utilities Commission this court said, "In a proceeding to review an order of the Commission, administrative or legislative in nature, judicial action cannot supplant the discretionary authority of that body. The review by the court exercising judicial functions only cannot extend beyond the questions whether the Commission has acted within its constitutional or statutory powers and whether its order or determination is supported by substantial evidence and is reasonable and not arbitrary." Application of Dakota Transportation, Inc. of Sioux Falls, 67 S. D. 221, 291, N.W. 589, 594.

In applying this principle it is important to bear in mind that which was so clearly said in People ex rel. New York & Queens Gas Co. v. McCall, 219 N. Y. 84, 113 N.E. 795, 796, Ann.Cas.1916E, 1042, as follows, "The court at the Appellate Division did not therefore have the power to determine that the extension of the relator's gas mains and pipes ordered by the Public Service Commission was unreasonable in the sense that it was an unwise or inexpedient order, but only that it was unreasonable if it was an unlawful, arbitrary, or capricious exercise of power. * * * The court at the Appellate Division substituted its own judgment for that of the Public Service Commission in determining that the latter's order was unreasonable. This decision, if allowed to stand, will seriously hamper the Commis-

sions in the discharge of their duties, and go far toward defeating the efforts of the Legislature to establish agencies to regulate the great public service corporations." Cf. Interstate Commerce Commission v. Illinois Central Railroad Co., 215 U. S. 452-478, 30 S.Ct. 155, 54 L.Ed. 280.

Whether the power to indemnify a utility against all damage to equipment installed at its request for municipal purposes, except reasonable wear and tear, is vested in a city, or whether the demand of Mr. Harding for a deposit, or his application to adopt the schedule of rules from which we have quoted supra were made in such a manner and in such time as to have a bearing here, are matters which need not be considered in view of the conclusion we have reached. We have concluded that, in any event, the commission acted within its powers in commanding that Mr. Harding render this vital municipal service without special indemnity.

The delegation of the power the Public Utilities Commission exercised in this proceeding is justified because living has been geared to and is dependent on utility services. In a recent case Justice Vanderbilt wrote: "The public utilities dealt with in the acts under review have long been held to be businesses affected with a public interest and therefore subject to special regulation by the State beyond that imposed on private industry generally. While such regulation of public utilities originally found its justification in the special franchises, often conferring monopolistic privileges, granted to them by the State, the regulation of utilities has long since found a broader justification in the necessities of our citizens for the services of these public utilities for health, safety and even life. * * * In the economic and social life of today, however, communication by telephone is a vital and indispensable essential to the health, safety and welfare of the public. Without the almost instantaneous means of communication that the telephone alone furnishes, our system of fire, and police protection would be rendered relatively ineffective and the health, safety and indeed the life of the individual citizen would be gravely endangered. It is unrealistic in this day and age to suggest that if the telephone is not available one may send a telegram or a messenger for a physician or a policeman or a

fire truck. * * *" State v. Traffic Telephone Workers' Federation, 2 N.J. 335, 66 A.2d 616, 621, 9 A.L.R.2d 854 at 864.

It is self-evident that the power of the commission to command a re-installation of this police telephone was invoked unless Mr. Harding was justified in demanding indemnity from the city.

The assurance he demanded of the city of Faith was not that it would discharge obligations legally chargeable to it for service or damage. He had no reason to apprehend, nor did he apprehend that such obligations would not be paid. His real concern and his demand for indemnity related to damages for which the city would not be legally responsible. The promptness with which the chief of police paid the claim for damage when requested so to do by the mayor, and the lesson he learned in that experience indicate that Mr. Harding has little if any real reason to apprehend future loss. Be that as it may, the risk of damage to equipment through the willful or malicious acts of individuals attends the business of operating a public utility. The policy of the commission is to require that the expense resulting from that risk be apportioned among all of the customers of the utility. Mr. Harding sought to shift a measure of that burden to the city of Faith as the price of essential utility service. In our opinion, it cannot be said that the order of the commission, which in effect refused to require the city to indemnify Mr. Harding against such a risk, is unreasonable in the sense of being arbitrary and capricious.

The judgment of the trial court is affirmed.

All the Judges concur.