In the Matter of the Appeal of AT & T INFORMATION SYSTEMS From the Assessment of Its Property Located In South Dakota for the Years 1984 and 1985.

AT & T INFORMATION SYSTEMS, Plaintiff and Appellee,

v.

SOUTH DAKOTA STATE BOARD OF EQUALIZATION, Defendant and Appellant.

No. 15370.

Supreme Court of South Dakota.

Argued Jan. 14, 1987.

Decided April 22, 1987.

Lawrence L. Piersol, of Davenport, Evans, Hurwitz & Smith, Sioux Falls, for plaintiff and appellee; James P. Kratochvill and Richard J. Sinton, of American Tel. and Tel. Co., Morristown, N.J., on brief.

John Dewell, Asst. Atty. Gen., Pierre, for defendant and appellant; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

KEAN, Circuit Judge.

This appeal considers whether a vendor and lessor of telephone equipment is a telephone company subject to ad valorem taxation and whether a person taxed by the Department of Revenue has a right to a de novo trial in the circuit court. The appellant is the State Board of Equalization (Board). The appellee is AT & T Information Services (ATTIS).

The South Dakota Legislature has enacted a statute authorizing the imposition of an ad valorem tax upon a telephone company's property. SDCL 10–33–10. Pursuant to this authority, the Department of Revenue (Department) in 1984 and 1985 imposed taxes upon certain personal property owned by ATTIS and leased to consumers in South Dakota. ATTIS resisted the imposition of this tax claiming it was not a telephone company either under statute or as that term is commonly used. After the imposition of the tax, ATTIS appealed to the Board. The Board upheld the Department's assessment and equalized the taxes. ATTIS appealed the Board's decision to the circuit court. A trial de novo was held although resisted by the Board. The circuit court reversed the decision of the Board, and, in an order which considered both the 1984 and 1985 assessments, ruled that ATTIS was not a telephone company subject to ad valorem taxation.

Prior to 1968, local telephone service in South Dakota was provided by AT & T subsidiary, Northwestern Bell Telephone Company and other local state independent phone companies. In those days telephone customers paid one charge for both the line transmission costs and the phone equipment. Phone equipment is known in the industry as customer premises equipment or CPE's. The charge for a CPE changed in 1978 when the Federal Communications Commission (FCC) determined that the CPE market had become adequately competitive and deregulation should be considered. Implications of the Telephone Industry's Primary Instrument Concept, 68 F.C.C.2d 1157 (1978). In 1980 the FCC ordered that CPE's would be deregulated and a new CPE would have to be offered to the customer separate from the regulated telephone transmission service. In the Matter of Amendment of Section 64.702 of the Commissions Rules & Regulations. (Second Computer Inquiry) (Final Decision), 77 F.C.C.2d 384, *as modified on further reconsideration,* 88 F.C.C.2d 512 (1980), *aff'd sub nom., Computer and Communications Industry Ass'n. v. F.C.C.,* 693 F.2d 198 (D.C.Cir.1982), *cert. denied sub nom. National Ass'n of Regulatory Utility Comm'n v. F.C.C.,* 461 U.S. 938, 103 S.Ct. 2109, 77 L.Ed.2d 313 (1983), *cert. denied sub nom. Louisiana Public Service Commission v. F.C.C.,* 461 U.S. 938, 103 S.Ct. 2109, 77 L.Ed.2d 313 (1983). This phased deregulation plan began January 1, 1983. A new CPE was one that was not on the customer's premises or in inventory prior to that date. The deregulation of in-place (embedded) CPE's was deferred to a later date.

In response to the FCC's deregulation, AT & T formed American Bell, Inc. which ultimately became ATTIS in 1982. It was a wholly owned subsidiary of AT & T, but with a completely separate corporate structure. ATTIS began selling and leasing new CPE's in South Dakota in 1983. It has fourteen business locations in nine counties consisting of retail outlets, a sales office,

and installation and maintenance service locations.

By a consent decree in a federal antitrust case in 1982, AT & T also began a divestiture of its regional telephone company subsidiaries like Northwestern Bell. *United States v. American Telephone and Telegraph Co.*, 552 F.Supp. 131 (D.D.C. 1982), appeal dismissed, 714 F.2d 178 (D.C. Cir.), *aff'd sub nom. Maryland v. United States*, 460 U.S. 1001, 103 S.Ct. 1240, 75 L.Ed.2d 472 (1983). After the consent decree, the FCC ordered the transfer of all embedded CPE's owned by AT & T's subsidiaries to ATTIS on January 1, 1984. The majority of the property subject to this assessment consists of these in-place CPE's used by and located on the premises of the customers and previously owned by Northwestern Bell.

### I.

IS AN APPEAL FROM THE STATE BOARD OF EQUALIZATION TO THE CIRCUIT COURT A DE NOVO PROCEEDING PURSUANT TO SDCL 10–11–43 OR AN APPEAL ON THE RECORD PURSUANT TO SDCL 1–26–35? WE HOLD THAT THE APPEAL IS A DE NOVO PROCEEDING.

The Board objected to the circuit court's determination that the review of the Department's tax assessment on ATTIS should be de novo. It argues that SDCL 10–11–43 has been repealed by implication, if compared with SDCL 1–26–30 to 1–26–30.3, and that appeals of any state agency to the circuit court are limited to the record by the Administrative Procedures Act, SDCL 1–26.

It is provided in SDCL 10–11–43 that: Any person, firm, corporation, taxing district, governmental subdivision or agency interested as described in § 10–11–42 may appeal from a decision of the state board of equalization to the circuit court for the county in which the property which is the subject of the action is situated. *The appeal shall be taken in the same form and manner as appeals are taken from the decision of the board of county commissioners to such court,*

except that the state board of equalization shall become the appellee and shall defend its decision on appeal. (Emphasis added)

SDCL 7–8–30, which refers to appeals of a board of county commissioners, provides in part: "All appeals thus taken to the circuit court shall be docketed as other causes pending therein *and the same shall be heard and determined de novo.*" (Emphasis added). And, it is also provided by SDCL 7–8–32 that an "Appeal to the circuit court from decisions of the board of county commissioners, as provided in this chapter, is an *exclusive remedy.*" (Emphasis added).

The Board's reliance on SDCL 1–26–35 is misplaced. While the Board correctly interprets this statute as a restriction upon de novo reviews, the language also provides other methods of appeal: "The review shall be conducted by the court without a jury and shall be confined to the record. A trial de novo shall not be granted *unless otherwise authorized by law.*" (Emphasis added).

It is clear that SDCL 10–11–43, with its reference to SDCL 7–8–30 provides this other exclusive remedy authorized by law, that is, a review de novo of appeals from the Board when the assessment is made by the Board.

The Board's argument that SDCL 1–26–30 restricts a de novo review is likewise in error.

A person who has exhausted all administrative remedies available within any agency or a party who is aggrieved by a final decision in a contested case is entitled to judicial review under this chapter. If a rehearing is authorized by law or administrative rule, failure to request a rehearing will not be considered a failure to exhaust all administrative remedies and will not prevent an otherwise final decision from becoming final for purposes of such judicial review. *This section does not limit utilization of or the scope of judicial review available under other means of review, redress, or re-*

*lief, when provided by law....* (Emphasis added)

The language of the statute itself rebuts the assertion that no other method of appeal is allowed. Moreover, such an interpretation of these statutory provisions has been one of solid consistency in allowing de novo reviews of appeals from the Board. *See, e.g., Chicago, Milwaukee, St. Paul and Pacific R.R. Co. v. Board of Commissioners of Walworth County,* 248 N.W.2d 386 (S.D.1976); *Appeal of Butte County,* 336 N.W.2d 151 (S.D.1983), *aff'd in part, rev'd in part,* 385 N.W.2d 108 (S.D.1986); *Mortenson v. Stanley County,* 303 N.W.2d 107 (S.D.1981).

The Board's argument that SDCL 7–8–32 and 10–11–43 have been repealed by implication by the APA, SDCL 1–26, is also flawed. While the general rule that repeals by implications are not favored is recognized, *see, e.g., Matter of Sales Tax Refund Applications,* 298 N.W.2d 799 (S.D.1980), such a detailed analysis is not needed in this case.

The APA was adopted in most respects between 1966 and 1975. Since that date some amendments have occurred and, as applied to this case, SDCL 1–26–30 was amended in 1978. However, SDCL 7–8–32 was reenacted in 1983. And, SDCL 10–11–43 was reenacted in 1985. It is inherent in the concept of repeal by implication that the statute which is doing the repealing be enacted subsequent to the statutes which are claimed to be repealed. Repeals by implication operate on statutes already existing, not statutes later enacted. Thus, the concept of repeal by implication is not applicable. *Matter of Bode's Estate,* 273 N.W.2d 180 (S.D.1979); *Argo Oil Corp. v. Lathrop,* 76 S.D. 70, 72 N.W.2d 431 (1955).

## II.

IS ATTIS A TELEPHONE COMPANY SUBJECT TO AD VALOREM TAXATION UNDER SDCL 10–30? WE HOLD THAT ATTIS IS NOT A TELEPHONE COMPANY SUBJECT TO SUCH TAXATION.

The primary issue before this court is whether ATTIS is a telephone company for purposes of taxation under SDCL 10–33–10. The taxation statutes do not define the term "telephone company." In such a situation the court may resort to the use of statutory interpretation, *In the Matter of the Appeal of Sales Tax Refund Applications of Black Hills Power and Light Co.,* 298 N.W.2d 799 (S.D.1980), or the ordinary and common meaning of the term if the statutes give little aid in interpretation. *Oahe Conservancy Subdistrict v. Janklow,* 308 N.W.2d 559 (S.D.1981).

The rules of statutory construction are many as applied to this matter. The following rules are pertinent. The purpose of statutory construction is to discover the true intention of the law which is to be ascertained primarily from the language expressed in the statute. *State Theatre Co. v. Smith,* 276 N.W.2d 259 (S.D.1979). The intent of a statute is determined from what the legislatures said, rather than what the courts think it should have said, *Elk Point Ind. School Dist. No. 3 v. State Comm'n on Education and Secondary Education,* 85 S.D. 600, 187 N.W.2d 666 (1971), and the court must confine itself to the language used. *Ex parte Brown,* 21 S.D. 515, 114 N.W. 303 (1907).

Words and phrases in a statute must be given their plain meaning and effect. *Board of Regents v. Carter,* 89 S.D. 40, 228 N.W.2d 621 (1975). When the language of a statute is clear, certain, and unambiguous, there is no reason for construction, and the court's only function is to declare the meaning of the statute as clearly expressed. *See, e.g., Petition of Famous Brands, Inc.,* 347 N.W.2d 882 (S.D.1984).

Since statutes must be construed according to their intent, the intent must be determined from the statute as a whole, as well as enactments relating to the same subject. *Simpson v. Tobin,* 367 N.W.2d 757 (S.D.1985). The rule of in pari materia applies to matters of taxation. *Applications of Black Hills Power and Light Co., supra.* But, in construing statutes together, it is presumed that the legislature did

not intend an absurd or unreasonable result. *Id.* at 803.

The Board argues that the definition of "telephone company" as used in SDCL 49–31–1 should be used. This section states:

The terms "telegraph company" and "telephone company," as used in this chapter, mean all corporations, associations, and individuals, their trustees, lessees, and receivers, that now or hereafter may own, operate, manage, or control any telegraph or telephone line, system, or exchange, or any part of any telegraph or telephone line, system, or exchange, in this state. "Independent telephone company" means a telephone company organized and operating under the laws of the state of South Dakota and providing service to less than seven thousand subscribers within the state.

The trial court, however, declined to follow this position. The reason for doing so was that such an interpretation ignored SDCL 49–31–2, which made all telephone companies subject to Public Utility Commission (PUC) regulations and declared them to be common carriers. Since the PUC does not regulate ATTIS, it does not fall under the definition found in SDCL 49–31–1.

■ We agree with the trial court's reasoning. Statutes must be read together. It is inappropriate to select one statute on a topic and disregard another statute which may modify or limit the effective scope of the former statute. By focusing only on SDCL 49–31–1 and disregarding SDCL 49–31–2, the Board ignores a limitation placed upon the definition of a telephone company, that is, to be a telephone company under SDCL 49–31 it must be subject to regulation by the PUC. Because it is not subject to regulation, the definition of SDCL 49–31–1 does not apply to ATTIS.

In referring to the common or ordinary meaning of the term telephone company, ATTIS does not come within such a definition. It was decided early on that a telephone company had certain public use characteristics. It was a company involved in the common carrying of information among the general public. *See In re Harding,* 74 S.D. 54, 48 N.W.2d 834 (1951). The essential service provided by a telephone company which separated and distinguished it from mere equipment companies was the transmission of information by wire or radio. *See Second Computer Inquiry, supra.* In *Transponder Corp. of Denver v. Property Tax Adm'r,* 681 P.2d 499 (Colo. 1984), a case dealing with ad valorem taxation of equipment used to send signals to and from a communications satellite, the Colorado Supreme Court found that the essential attribute of a phone company was providing communication services with unrelated persons. *Id.* 503. Since the equipment provided a link only between the various offices of a customer, Transponder was not considered a phone company which allowed communications between unrelated customers.

ATTIS owns, sells, and leases CPE's. It does not own wires, cables or poles. It can sell or lease its products statewide and is not confined to any geographic area. It is not regulated by the PUC on its rate of return of investment. Its products are priced in the market place. It has no right to condemnation or eminent domain.

Since deregulation CPE owners have unlimited use of their equipment. They must call Northwestern Bell for line trouble and ATTIS for equipment trouble. They must pay for a premise call to repair the CPE. They receive separate bills for wire service and CPE use (if leased). They can retain the CPE (if purchased) even if wire charge is not paid. All these conditions were the opposite prior to deregulation when the phone company owned both the equipment and the lines. Merely buying or leasing a CPE from ATTIS does not mean you are capable of communicating with someone unrelated to the customer. Line service or transmission service from Northwestern Bell still must be obtained in order to put the CPE to use.

Total phone operations today after deregulation are not the same as twenty-five or even ten years ago. In the case of *Adams v. Northwestern Telephone Exchange Co.,* 44 S.D. 187, 183 N.W. 113 (1921), this court held that a PBX system installed in a hotel was part of the overall phone operations of

the telephone company. But, the facts of that case when compared to the testimony of this case show the evolution of phone operations in the last decade. No longer today is the customer required to lease or buy a CPE from one vendor. No longer is the customer required to pay the PUC's regulated rate on CPE's; he can go into the market and negotiate for a CPE. No longer does buying a CPE guarantee access to Northwestern Bell's transmission wires. Quite factually, telephone service and CPE's are a "different ballgame" these days.

The Board asserts that ATTIS's maintaining, installing, and leasing of PBX equipment makes it a phone company. Again such assertion ignores the public nature of a phone company. A PBX (a specialized CPE) can be bought from one of several vendors. The purchaser need not offer use of his PBX to the general public. However, the true telephone company, such as Northwestern Bell, is required by its common carrier status to make its transmission lines open to all members of the public who pay the designated PUC rate.

Moreover, if the Board's argument is taken to its logical conclusion a rather absurd result is produced. The argument made is that a telephone company is an entity who owns operating, managing or controlling part of a telephone line, system, exchange or any part thereof. If this is true anyone then owning, operating, managing or controlling a PBX or any CPE by any person, entity, and even the state (which owns a PBX) would be a telephone company.

The Board also claims as error the trial court's finding that for property tax purposes a separate class consisting of utilities and common carriers was developed by the legislature. In support of its position the Board cites *Appeals of Chicago & Northwestern Ry. Co.*, 85 S.D. 613, 188 N.W.2d 276 (1971), which held that the legislature did not create a separate class for utilities with regard to the rate of tax imposed or which factors to use to determine the taxable value.

But, the trial court in this case did not hold that telephone companies are a separate class or the rate to be imposed or which factors to use to determine taxable value. The trial court only found that telephone companies belong to that group of companies which are centrally assessed. And, in comparing the ATTIS to those entities which are centrally assessed, ATTIS does not share their common characteristics.

One of the common characteristics of utilities is that the property to be assessed passes through several taxing jurisdictions. Rather than have a series of local valuation for the transmission line, for example, there is a single assessment at the state level for taxation purposes. ATTIS's property does not pass through several jurisdictions. The items it owns can be assessed locally in their fixed sites and there is no concern over duplication of assessment.

We hold that ATTIS is not a "telephone company" within the meaning of the statutes or as that term is commonly used. Accordingly, the judgment of the trial court is affirmed in all respects.

All the Justices concur.

KEAN, Circuit Judge, for MILLER, J., disqualified.