M.B., Applicant,

v.

Honorable John K. KONENKAMP,
Respondent,

and

State of South Dakota, Real Party
in Interest and Respondent.

No. 18461.

Supreme Court of South Dakota.
Original Proceeding
Argued Nov. 29, 1993.
Reassigned Aug. 11, 1994.
Decided Oct. 12, 1994.

Mark Barnett, Atty. Gen., Lawrence Long
and Jeffrey P. Hallem, Asst. Attys. Gen.,
Pierre, for respondents.

Lelia L. Hood, Wurm & Hood, Rapid City, for applicant.

SABERS, Justice (on reassignment).

M.B. seeks a writ of prohibition against Circuit Judge John Konenkamp's order requiring her under SDCL 26–7A–107 to undergo inpatient drug and alcohol abuse treatment at the South Dakota Human Services Center in Yankton, South Dakota. We grant the Writ of Prohibition.

## FACTS

J.J.C. and his mother M.B. appeared before Circuit Judge John Konenkamp (Konenkamp) in a juvenile delinquency proceeding on February 8, 1993. On March 17, 1993, J.J.C. was ordered to the State Training School in Plankinton as recommended by Court Service Officer Dudley Lapointe (Lapointe). This recommendation was based upon J.J.C.'s arrest for shoplifting and third-degree burglary, his suspension from high school and his absconding from the jurisdiction while in aftercare from a prior commitment to the State Training School.

At J.J.C.'s dispositional hearing, Lapointe also recommended M.B. undergo a chemical dependency evaluation for possible treatment. Lapointe believed M.B. had an alcohol dependency problem which contributed to J.J.C.'s delinquent behavior. Lapointe admitted his recommendation was primarily based on hearsay and J.J.C.'s extensive involvement with the juvenile justice system. He advised Konenkamp that he expected "none less than a very intensive outpatient recommendation as a result of the assessment, if not inpatient treatment." After hearing this recommendation, M.B. complained: "I'm not the one on trial here, my son is, and I don't understand all this, what is going on, so if we can continue it, if I can talk to somebody, because I feel I'm being railroaded here." Konenkamp then ordered a chemical dependency evaluation in an effort to provide a healthy relationship between J.J.C. and his mother.[1]

M.B. underwent a chemical dependency evaluation at the Addiction Recovery Center (ARC), a part of Rapid City Regional Hospital. This evaluation made a provisional diagnosis of alcohol abuse and recommended abstinence with attendance at Alcoholics Anonymous (AA) meetings.

Lapointe found the ARC recommendation "unexpected" and arranged for another evaluation at the Pennington Program, a division of the Pennington County Sheriff's Department. Prior to the second evaluation, Lapointe visited with the personnel at the Pennington Program and requested a specific counselor perform the evaluation. A chemical dependency trainee performed the evaluation and diagnosed M.B. as having severe alcohol dependence and recommended inpatient treatment. This diagnosis was partially based on the fact that M.B. smelled of alcohol during the evaluation and admitted using alcohol the day before the evaluation. Another factor in this diagnosis was that M.B. was unable to abstain from alcohol use after her first evaluation even though abstinence was recommended by the chemical dependency counselor at ARC.

After the second evaluation, Konenkamp granted M.B.'s application for court-appointed counsel. An evidentiary hearing was held on August 16, 1993, to consider M.B.'s motion to vacate the order for lack of jurisdiction and whether M.B. could be required to attend inpatient chemical dependency treatment.[2] At this hearing, Konenkamp took judicial notice of J.J.C.'s extensive juvenile file. The file shows that J.J.C. has been arrested and charged with at least fifteen different offenses, ranging from shoplifting to grand theft. The record also reveals that J.J.C.'s psychological tests and evaluations

1. M.B. has two DWI convictions and one felony conviction for distribution of cocaine on her criminal record.

2. Prior to this hearing, Konenkamp quashed his original order requiring M.B. to be transported by the Pennington County Sheriff to the Human Services Center in Yankton for an inpatient treatment program. The new order dated September 7, 1993, required that M.B. "shall enter alcohol treatment, either out-patient or in-patient, within thirty days, [ ]" or "if the mother cannot attend in-patient treatment at the South Dakota Human Services Center in Yankton, South Dakota, to commence within thirty days or any such other certified in-patient facility of her choice."

indicate that M.B.'s alcohol use has been a contributing factor to J.J.C.'s delinquency. More specifically, these evaluations indicated that J.J.C. "has experienced substantial disruption to his life from parental chemical use."

Lapointe then renewed his recommendation of inpatient alcohol treatment for M.B. He based his recommendation on the Pennington Program evaluation. However, the ARC counselor testified that M.B.'s use of alcohol after the first evaluation would cause him to change his diagnosis about the severity of M.B.'s alcohol dependency and some treatment would be recommended.

On August 31, 1993, M.B. informed Konenkamp that she was unable to locate affordable outpatient or inpatient treatment. Thereafter, M.B. filed this application for a writ of prohibition. This court has issued an alternative writ of prohibition staying the trial court's order pending outcome of this appeal.

### ISSUES

1. Did Judge Konenkamp exceed his statutory authority by ordering M.B. to undergo inpatient alcohol treatment during a juvenile delinquency proceeding against her child?

2. Did the court order violate M.B.'s right to procedural due process?

3. Does SDCL 26–7A–107(8) violate M.B.'s right to substantive due process?

4. Whether SDCL 26–7A–107(8) violates the state and federal constitutions' equal protection clauses?

A writ of prohibition is an extraordinary remedy. It may issue upon a showing that a public officer is acting or is about to act without or in excess of his jurisdiction, or without or in excess of the authority conferred by law. It may be issued in a direct application to this Court in appropriate circumstances.

It is required that an applicant for a writ of prohibition must show that he or she has no 'plain, speedy and adequate remedy in the ordinary course of law' available to them. If there is another 'plain, speedy and adequate' remedy at law or in equity, equally available to an applicant, this Court has held it will not issue a writ of prohibition.

*Cummings v. Mickelson,* 495 N.W.2d 493, 495 (S.D.1993) (citations omitted).

1. Did Judge Konenkamp exceed his statutory authority by ordering M.B. to undergo inpatient alcohol treatment during a juvenile delinquency proceeding against her child?

■ "Juvenile procedure is a creature of statute. The court in juvenile proceedings has only that jurisdiction and authority granted to it by the legislature." *People in Interest of C.E.B.,* 263 N.W.2d 874, 875 (S.D. 1978). M.B. argues that Konenkamp exceeded this statutorily granted authority or jurisdiction by ordering M.B. to submit to inpatient alcohol treatment during a juvenile delinquency proceeding against her son, J.J.C.

SDCL chs. 26–7A, –8A, –8B, and –8C constitute the core of South Dakota's juvenile code. Chapter 26–7A sets forth the rules of procedure for juvenile courts. Chapters 26–8A, B, and C govern specific types of juvenile proceedings (i.e., abuse and neglect, children in need of supervision, and delinquency). Prosecution of J.J.C. proceeded under the delinquency provisions of Chapter 26–8C. Konenkamp ordered M.B. to undergo alcohol treatment by means of SDCL 26–7A–107(8).[3]

---

3. SDCL 26–7A–107 provides in pertinent part:

The court may make an order of protection in assistance of, or as a condition of, any decree of disposition authorized by this chapter or chapter 26–8A, 26–8B or 26–8C. The order of protection may set forth reasonable conditions of behavior to be observed for a specified period by the child's parents, guardian, custodian or any other person who is a party to such proceedings.

The order of protection may require any concerned person or party:

. . . . .

(8) To cooperate with and participate in any physical or mental examination or evaluation, counseling, treatment, therapy or child care or parenting classes considered necessary by the court for the benefit of the child.

After notice and opportunity for a hearing is given to any person or party subject to an order of protection, the order may be terminated, mod-

SDCL 26–7A–107 specifically provides a court acting in a delinquency proceeding the power to include in its order of protection a requirement that "any concerned person or party ... cooperate with and participate in any physical or mental examination or *evaluation,* counseling, *treatment,* therapy or child care or parenting classes considered necessary by the court for the benefit of the child." (Emphasis added.)

This statute is compatible with the legislature's desire to construe these provisions "liberally ... in favor of the child ... for the purposes of protecting the child from abuse or neglect by the child's parents ... and for the purposes of affording guidance, control and rehabilitation of ... any delinquent child." SDCL 26–7A–6. This is our first opportunity to interpret a juvenile court's authority under this statute. Although Judge Konenkamp had authority to enter a protection order requiring M.B. to cooperate with and participate in chemical dependency evaluation and treatment under SDCL 26–7A–107(8), he had no authority of commitment in the event of refusal of treatment under this juvenile chapter. His authority was limited to the issuance of orders protective of the juvenile.

■■■■ Obviously, the trial court's primary concern was J.J.C.'s best interest. However, when interpreting statutes, this court is bound by the actual language of the statute. *State v. French,* 509 N.W.2d 693, 695 (S.D. 1993). The intent of the statute must be determined from what the legislature said, rather than what this court thinks the legislature should have said, and this determination must be confined to the plain, ordinary meaning of the language used by the legislature. *Id.* (citing *In re AT & T Info. Sys.,* 405 N.W.2d 24, 27 (S.D.1987)). Interpretation of these statutes shows that courts do not have unfettered discretion. These statutes are devoid of any authority to involuntarily commit a person to a thirty-day inpatient treatment program. Juvenile court orders of protection may only set forth "*reasonable conditions* of behavior to be observed for a specified period

by the child's parents." SDCL 26–7A–107. Obviously, requiring a parent to undergo some type of alcohol treatment for the benefit of their minor child is a reasonable means of protecting the child's best interests. Konenkamp explained: "I want to have [J.J.C.] come home to a sober, healthy mother who is able to provide for his needs. That is something that he has not had for a very, very long time." If a parent does not comply with the terms and conditions of a protective order the minor remains under the court's control and need not be returned to a dysfunctional home. SDCL 26–7A–107, –117. However, this does not mean the court can compel treatment or commitment. The juvenile court in this case was trying to make a suitable home environment for J.J.C., but simply exceeded its statutory authority. Therefore, we must grant M.B.'s Application for a Writ of Prohibition.

SDCL 26–7A–107 "is aimed at requiring parents to aid the court in enforcement of its valid orders, or to require parents to cease unlawful actions with regard to a child who is under the jurisdiction of the court," and SDCL 26–7A–107 "is not [ ] a vehicle by which the court may transfer liability for a child's wrongdoing from child to parent." *Wilson v. West,* 709 S.W.2d 468, 471 (Ky.Ct. App.1986). SDCL 26–7A–107 provides in part that: "The court may make *an order of protection in assistance of, or as a condition of,* any decree of disposition authorized by this chapter or chapter 26–8A, 26–8B or 26–8C." (Emphasis added.) Therefore, the juvenile court exceeded its statutory authority when it ordered M.B. to enter either an outpatient or inpatient treatment program or, if she was unable to locate affordable treatment, submit herself to the inpatient treatment program at the Human Services Center in Yankton.

■■■■ Statutes are to be read in pari materia. *Federal Land Bank of Omaha v. Carlson,* 422 N.W.2d 99, 101 (S.D.1988) (Sabers, J., dissenting).

The object of the rule of pari materia is to ascertain and carry into effect the inten-

ified or extended for a specified period of time if the court finds it in the best interests of the child,

the public and the state.

tion of the legislature. It proceeds upon the supposition that the several statutes were governed by one spirit and policy, and were intended to be consistent and harmonious in their several parts and provisions. For purposes of determining legislative intent, we must assume that the legislature in enacting a provision has in mind previously enacted statutes relating to the same subject matter. As a result, the provision should be read, if possible, in accord with the legislative policy embodied in those prior statutes.

*State v. Chaney,* 261 N.W.2d 674, 676 (S.D. 1978) (citations omitted).

■ Therefore, under the rule of pari materia, because Chapter 34-20A specifically outlines the procedure necessary to involuntarily commit an individual to treatment, the legislature could not have had "in mind" involuntary commitment as a "reasonable condition[ ] of behavior to be observed ... by the child's parents[.]" SDCL 26-7A-107. If the juvenile court believed sufficient grounds existed to involuntarily commit M.B., it should have followed the procedures enunciated in Chapter 34-20A rather than have attempted to find statutory authority under SDCL 26-7A-107 which permits, at most, the termination of parental rights for failure to comply with protection orders. In summary, SDCL 26-7A-107 provides for *orders of protection* and Chapter 34-20A provides for *orders of commitment.*

■ The juvenile court exceeded its authority under SDCL 26-7A-107. Prohibition is a proper remedy and we grant the Petition for Writ of Prohibition. *See generally Wilson,* 709 S.W.2d at 472.

In view of this holding on Issue 1, it is not necessary to reach Issues 2, 3 and 4.

WUEST, J., concurs.

HENDERSON, Retired Justice, concurs specially.

MILLER, C.J., and AMUNDSON, J., concur in part and dissent in part.

KONENKAMP, J., was not a member of the Court when this case was submitted.

HENDERSON, Retired Justice (concurring specially).

Under the auspices of SDCL 26-7A-107, M.B. was ordered to undergo alcohol treatment. A civil commitment deprives an individual (such as respondent) of liberty no less than a commitment to jail or prison, be the motive punitive or corrective. Neither this statute nor any other part of the juvenile code requires any notice, hearing or procedure whatsoever prior to the juvenile court's issuance of such a protective order. Thus, the juvenile code is in a state of disrepair.

Although Judge Konenkamp attempted to bridge this statutory gap, M.B. was not advised of her rights and potential liabilities at her first appearance as required by SDCL 26-7A-30. She had no idea that she could face detention and loss of her liberty. Thus, at the early stages of these proceedings against her son (which evolved into proceedings against her also), M.B. was denied a reasonable opportunity to be heard in a meaningful manner. *Boddie v. Connecticut,* 401 U.S. 371, 378, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971); *Daugaard v. Baltic Co-op Bldg. Supply Ass'n,* 349 N.W.2d 419, 424 (S.D.1984). Despite eventually receiving counsel, evidence obtained during the early stages, when she had no counsel, damaged her throughout the proceedings. This Court cannot countenance such a constitutional infirmity. Involuntary commitment is an extreme remedy to be used in carefully circumscribed circumstances. For a discussion on the two types of involuntary commitment, i.e., (a) protective custody or (b) detoxification and commitment and the ramifications thereof, *see Matter of B.A.S.,* 134 Wis.2d 291, 397 N.W.2d 114 (App.1986).

We are not engaged in a merit-discussion of the trial court's good intentions. Obviously, the motives were good. Rather, our goal is an academic pursuit to determine if the involuntary commitment herein meets the test of law. To such end, we should be cognizant that involuntary commitment is a creature of statute and it must be confined to its own statutory birth. Thus, it is axiomatic that a failure to follow specific procedures will result in a dismissal of the proceedings.

*See also In re Thorne,* 307 Mich. 659, 12 N.W.2d 445 (1943).

Here, the record (it weighs about five pounds) does not demonstrate that respondent M.B. was advised prior to her son's admission of delinquency that custodial treatment for her was in the offing upon the disposition of his offense. Nor would such an outcome fall within her reasonable expectations. *Cf. State v. Wolff,* 438 N.W.2d 199 (S.D.1989). There must be procedural due process. It does not exist before us. *See* U.S. Const.Amend. V and XIV; S.D.Const. art. VI, § 2. As I perceive the status of the record, the trial court proceeded under SDCL 26–7A–107, same being in violation of due process, because it fails to set out procedures whereunder protective orders are to be entered. Said statute fails to provide a statutory mechanism for (1) an adversarial hearing; (2) confrontation of witnesses; (3) burden of proof; * (4) notice of accusation, or any other procedural safeguards which are incorporated pursuant to the statutes on commitments. *See* SDCL ch. 34–20A.

As Judge Oliver Wendell Holmes once wrote, "[I]t is not an adequate discharge of duty for courts to say: We see what you are driving at, but you have not said it, and therefore we shall go on as before." *Johnson v. United States,* 163 F. 30, 32 (1st Cir.1908).

My destination on this legal trip is justice, justice in the case. I simply travel a different road than the majority opinion and the other special writing, which also seek justice as they visualize it. It is the constitutional road. This Court should not—cannot—create an analog for the statutory procedures for alcohol commitment *within the juvenile court jurisdiction* by providing a notice and hearing and furnishing counsel to the respondent in the waning moments of the legal proceeding. Unfortunately for M.B., the course was charted.

Perhaps the State Legislature, within the framework of its constituted committees studying significant decisions emanating from this august Court, will grasp the inferential whisper of a Retired Justice. Then,

hopefully, like the dawn breaking upon the Black Hills with sifting rays of sunlight peeking through the pines, a leap of constructive induction will bask the legislative power. Thereupon, we shall *not* "go on—as before." Amen, Brother Holmes.

AMUNDSON, Justice (concurring in part and dissenting in part).

Konenkamp was dealing with a repeat juvenile offender who resided in a dysfunctional home. The minor had previously expressed concern regarding M.B.'s drinking habits. Konenkamp was making a valiant effort to address the custodial parent's drinking problem; namely, returning the minor to a sober home. In an attempt to provide such an environment, Konenkamp entered the protection order under the provisions of SDCL 26–7A–107(8). The language of this section provides that such an order may "require" a parent to participate in treatment. The definition of "require" is the imposition of a command upon a person to do something. Webster's Third New International Dictionary.

In this same source, the definition of "compel" is to "force, require or command the doing of something." Webster's Third New International Dictionary. Therefore, it seems fairly obvious that the plain meaning under this statute authorized Konenkamp to require or compel M.B. to cooperate and participate in treatment for alcohol addiction. *Appeal of AT & T Info Sys.,* 405 N.W.2d 24, 27 (S.D.1987). The issue in this case boils down to interpreting what the statute authorizes if the parent refuses to cooperate in the ordered treatment. The only leverage a court would have in such a circumstance is to not return the minor child to the noncooperating parent's home. There is no question that the statute does not provide for any type of involuntary commitment to a program operated by the State in Yankton, South Dakota.

Therefore, I concur with the majority's holding that a protection order under SDCL 26–7A–107(8) does not authorize involuntary

---

* The state bears the evidentiary burden, in an alcohol commitment proceeding, of clear and convincing evidence. SDCL 34–20A–77. No burden of proof is set forth in SDCL 26–7A–107.

incarceration in an inpatient alcohol treatment program. On the other hand, I do not agree that a trial court cannot order alcohol treatment for a parent under the language of this statute.

In my opinion, the case of *Wilson v. West*, 709 S.W.2d 468 (Ky.Ct.App.1986), cited by the majority, is inapposite to the issues in this case. The *West* case involved an attempted transfer of payment of restitution from the child to the parent and the present case does not in any way involve a "transfer of liability."

Although the protection order went a step too far, it was obviously a legitimate attempt to assist the decree of disposition entered and to assist in the rehabilitation of the juvenile. Konenkamp attempted to provide for a stable, caring, sober environment for the juvenile upon his release from the training school and being placed in the aftercare program. This certainly depicts an effort by a judge to look after the best interests of a troubled minor.

I am authorized to state that Chief Justice MILLER joins this concurrence in part and dissent in part.